[Civ. No. 21936.   Second Dist., Div. Three.   June 7, 1957.]

STANLEY C. ANDERSON, Appellant, v. JOSEPH D. BRADY et al., Respondents.

*Assigned by Chairman of Judicial Council.

N. E. Youngblood and Robert M. Maslow for Appellant.

Frank P. Doherty, Frank W. Doherty and Robert M. Barton for Respondents.

WOOD (Parker), J.—The complaint alleged that plaintiff and the defendants Brady, Nossaman, and Paulston entered into an oral partnership agreement for the practice of law. Plaintiff sought an accounting and declaratory relief. Defendants denied generally and specifically the allegations of the complaint, except that plaintiff was an attorney at law; and defendants alleged that plaintiff and defendants were partners under certain conditions, restrictions, and limitations.

Defendants Brady and Nossaman filed a cross-complaint, alleging that plaintiff and defendants Brady and Nossaman entered into an oral partnership agreement under certain conditions, restrictions, and limitations; that plaintiff voluntarily withdrew from the partnership; that after such withdrawal plaintiff, while completing certain work pursuant to agreement, received money belonging to cross-complainants and used an office and facilities of cross-complainants. Cross-complainants sought an accounting and reasonable rental value of the office and facilities. Plaintiff, in his answer to the cross-complaint, offered to account for the money in connection with the final accounting in the partnership matter.

The judgment was that plaintiff take nothing by reason of the complaint, and that cross-complainants recover $8,359.91 upon the cross-complaint. Plaintiff appeals from the judgment.

Appellant contends (1) that the court erred in finding that plaintiff was not a partner; (2) the court erred in determining the amount due under the cross-complaint; and (3) the court abused its discretion in denying plaintiff's motion to amend his "pleadings."

For several years prior to December, 1942, Mr. Joseph D. Brady practiced law in Los Angeles, specializing in tax matters. In December, 1942, Mr. Brady and Mr. Walter L.

Nossaman formed a partnership to practice law under the firm name of Brady and Nossaman, and thereafter they practiced law as partners.

On January 1, 1943, Mr. John O. Paulston, an attorney at law, was employed by the firm of Brady and Nossaman under an oral agreement that he would be paid a reasonable amount for his services, and that from time to time he would be paid such amounts as he would request and as would be approved by the firm, and that at the end of each fiscal year (which was November 30) Mr. Brady would review the services performed by Mr. Paulston during the year, and Mr. Brady would determine, with the approval of Mr. Nossaman, an additional amount that should be paid to Mr. Paulston for his services.

On December 15, 1943, Mr. Anderson, plaintiff herein, was employed by the firm under an oral agreement which was in substance the same as the agreement between Mr. Paulston and the firm.

Mr. Paulston and Mr. Anderson rendered services under the oral agreements. During each fiscal year, prior to January 1, 1947, and pursuant to the employment agreements, the firm paid Mr. Paulston and Mr. Anderson such amounts as they requested; and also at the end of each fiscal year Mr. Brady held a conference with each of them, reviewed each one's services for the year and determined, with the approval of Mr. Nossaman, the additional amount that was to be paid to each one for that year.

About November 30, 1946, when Mr. Brady held the third year-end conference with Mr. Anderson, Mr. Brady gave Mr. Anderson his additional or augmentation check for that year. About that date there was a conversation between Mr. Brady and Mr. Anderson which allegedly constituted a partnership agreement.

Mr. Brady testified that on said November 30, 1946, or shortly thereafter, he told Mr. Anderson that he had talked to Mr. Nossaman about asking Mr. Anderson if he would like to become a partner of a very restricted type; that Mr. Anderson replied that "he would like to"; Mr. Brady told Mr. Anderson at that time that insofar as the financial arrangement that would exist in the future between him and Brady and Nossaman, that it would be exactly the same as it had been during the past three years.

Plaintiff took the deposition of Mr. Brady. Mr. Brady testified therein that in November, 1946, about the time he determined the additional amount that should be paid to Mr. Ander-

son for that year, he told Mr. Anderson that he "had suggested to Walter [Mr. Nossaman] that both John Paulston and Stanley Anderson be told that if they wished to do so they could become—could be called partners within the restrictions set forth in our Answer." He also testified therein that he thought he did not use the word "restrictions," but he "told Mr. Anderson that as far as the financial arrangements between him and the firm of Brady & Nossaman, they would remain just as they had been in the past." He also testified therein that he told Mr. Anderson that Mr. Nossaman and he liked Mr. Paulston and Mr. Anderson and they "thought his being called a partner would lend prestige to him in—in his relations with other lawyers and contemporaries at the bar and otherwise."

Mr. Anderson testified that about November 25, 1946, he and Mr. Brady had a conversation in Mr. Brady's office, and that "Mr. Brady said that Mr. Nossaman and he had decided or had come to the conclusion that it would be a good idea for Mr. Paulston and me to become members of the firm."

About the same date (November 30, 1946) there was a similar conversation between Mr. Brady and Mr. Paulston.

The effective date of the alleged partnership agreements was January 1, 1947. Thereafter Mr. Anderson and Mr. Paulston rendered services in the same manner as they had rendered services theretofore. Also, they were compensated in the same manner as they had been compensated, except that in 1949 and thereafter Mr. Anderson was permitted to withdraw $1,000 a month. At the end of each fiscal year in 1947, 1948, and 1949, Mr. Brady held conferences with each of them, reviewed each one's services for the year, and determined, with the approval of Mr. Nossaman, the additional amount to be paid to each one. At the end of the fiscal year in 1950, a conference was not held with Mr. Anderson regarding the additional amount to be paid to him, but a check for an additional amount of $4,000 was placed on Mr. Anderson's desk. He accepted the check. At the end of the fiscal year in 1951, Mr. Brady held a conference with Mr. Anderson regarding the additional amount to be paid, and he determined, with the approval of Mr. Nossaman, that the additional amount should be $4,750 (making a total payment of $16,750 for that year). Mr. Anderson testified that he replied, in substance, that he thought the fees received by the firm in 1951 which were attributable to his services amounted to $43,000, and that the additional amount of $4,750 suggested by Mr. Brady was not

acceptable until he had more data; that Mr. Brady replied that the fees totaling $43,000 were the result of services rendered by Mr. Anderson not only in 1951 but necessarily in prior years. On December 4, 1951, Mr. Anderson told Mr. Brady that he was withdrawing from the firm and that his withdrawal would be effective as of November 30, 1951 (the end of the fiscal year).

In January, 1952, Mr. Anderson accepted $5,000 (instead of $4,750) as the additional amount for 1951, without prejudice to his claim that the additional amount should be more.

After January 1, 1947 (the date of the alleged partnership agreement), Mr. Anderson was paid the following amounts: 1947—$14,000; 1948—$15,000; 1949—$15,000; 1950—$15,000; 1951—$17,000.

On or after January 1, 1947, the date of the alleged partnership agreement, there was no segregation of assets (on that date the amount of the firm's accounts receivable was between $150,000 and $200,000 and the firm had approximately $30,000 in a bank); no new books of account were opened; Mr. Anderson did not make a capital investment; he was not consulted regarding the personnel of the office; he did not attend any meeting with respect to the gross or net receipts of the firm, and he did not have information as to such receipts until after this action was filed; he did not know the amount of income of the firm or the amounts which were received from the firm by Mr. Brady or Mr. Nossaman; he had not seen the books of account, and he did not have access to those books.

After January 1, 1947, the firm of Brady and Nossaman sent out announcements, announcing "the admission to the partnership of" Mr. Paulston, Mr. Anderson, and Mr. Shaw. (The arrangement with Mr. Shaw was similar to the arrangement with Mr. Paulston and Mr. Anderson, except that he was paid a specified amount each month.) Also, after January 1, 1947, the firm of Brady and Nossaman listed, in an attorneys' directory, the name of Mr. Anderson as a member of the firm. In 1950 a certificate of doing business under the fictitious name of Brady and Nossaman was filed, reciting that Mr. Anderson was a partner. The firm filed a registration form with the California Department of Employment stating thereon that Mr. Anderson was a partner. The firm filed federal and state income tax returns, listing Mr. Anderson as a partner. The firm authorized Mr. Anderson, as a partner, to sign checks on bank accounts at the Union Bank and Trust Company and the Farmers and Merchants National Bank.

The bank accounts in the Union Bank and Trust Company and the Farmers and Merchants National Bank were in the amounts of $2,000 and $10,000 respectively. Those were inactive accounts and were for the purpose of promoting good will. The main or active bank account of the firm was with the Citizens National Bank, and Mr. Anderson was not authorized to draw checks on that account.

Appellant contends that the court erred in finding that he was not a partner. He argues to the effect that the finding that he was not a partner was contrary to admissions in defendants' pleadings that he was a partner. He argues further that even if there is not such an admission in the defendants' pleadings the finding that he was not a partner is not supported by the evidence.

The complaint alleged that plaintiff was a partner. As above stated, the answer denied generally and specifically the allegations of the complaint, except that plaintiff was an attorney; and the answer alleged that: "In the latter part of 1946, Mr. Brady . . . invited Mr. Paulston and Mr. Anderson to become partners in the law firm of Brady and Nossaman, commencing January 1, 1947 under the following special conditions, restrictions, and limitations[1] . . . ." The cross-complaint

---

[1] "1. That neither Mr. Paulston nor Mr. Anderson would be permitted to purchase or own or possess any interest in the assets, capital investment, and accounts of said law partnership as of January 1, 1947, or thereafter. 2. That in payment of the respective services of Mr. Paulston and Mr. Anderson as partners during each fiscal year ending November 30, Mr. Paulston and Mr. Anderson would receive amounts as follows: (a) Mr. Paulston and Mr. Anderson would continue to be entitled to receive, as in prior years, and from time to time during the course of said law firm's fiscal year such sums of money as Mr. Paulston and Mr. Anderson, or either of them, might request and need for living or other expenses and in an amount, or amounts, to be approved by Mr. Brady. (b) At the close of each fiscal year on November 30, Mr. Paulston and Mr. Anderson, and each of them, would receive for their respective contributions by way of service as partners during such year an additional amount, if any, as Mr. Brady would fix and determine and which Mr. Nossaman would approve, over and above the sums and amounts received in said year by Mr. Paulston and Mr. Anderson, respectively, during the course of said fiscal year. . . . (c) . . . (d) . . . (e) . . . (f) . . . (g) . . . (h) . . . (i) . . . (j) . . . ." The allegations in said subdivisions (c) to (j) inclusive, which are omitted in the above quotation, were to the effect that Mr. Brady in determining the amounts to be paid would take into consideration the quality of the services rendered, the time given in performing the services, the importance of the matters, the fees earned, and other factors bearing upon the value of the contributions of Mr. Paulston and Mr. Anderson as partners; that it was in the contemplation of the parties that substantially all the clients of the law firm would be persons or firms that needed the services of those specializing in tax matters and would seek the services of Mr. Brady and Mr. Nossaman, and that Mr. Paulston and Mr. Anderson did not have any established

alleged that: ''On November 30, 1951, Mr. Brady and Mr. Nossaman, together with Mr. Anderson and John O. Paulston . . . were members of a partnership for the practice of law in the City of Los Angeles . . . under the firm name . . . of Brady and Nossaman. On or before December 4, 1951, Mr. Anderson voluntarily withdrew from said partnership . . . .'' It was also alleged in the cross-complaint that plaintiff did not own or possess any interest in the assets, capital investment, or accounts of the partnership, and that plaintiff's only financial interest under the oral partnership agreement was limited to the right to receive from time to time during the year amounts requested by him, as approved by Mr. Brady, plus an additional amount at the close of the year, as determined by Mr. Brady and Mr. Nossaman, in full payment for plaintiff's services as a partner during the year.

It thus appears that there was a general denial that plaintiff and defendants were partners, and it appears that defendants alleged further that plaintiff was invited to become a partner and that he was a member of a partnership under specifically alleged conditions, restrictions, and limitations.

It is to be noted that at the beginning of the trial, counsel for plaintiff apparently was of the opinion that under the pleadings there was an issue as to whether plaintiff was a partner. When the case was called for trial, counsel for plaintiff said that it had been stipulated as to the order of proof that the first issue to be heard was whether plaintiff was a partner, as that issue is set up, alleged and denied in the

---

private practice and did not have clients who were seeking their services in tax matters; that it was in the contemplation of the parties that the fees received by the firm would continue to be deposited in the Citizens National Bank and that checks on the account would be subject only to the signature of Mr. Brady or Mr. Nossaman; that after the payment to Mr. Paulston and Mr. Anderson of the amounts as above stated, the balance of the fees would be retained by Mr. Brady and Mr. Nossaman to be shared between them as determined by Mr. Brady; that it was in the contemplation of the parties that no accounting or statement would be prepared for the information of Mr. Paulston or Mr. Anderson or that there would be prepared for the information of Mr. Paulston or Mr. Anderson or that there would be submitted to either of them any statement of the fees received or disbursements made in connection with the affairs of the firm; that it was agreed by the parties that the accounts then being serviced by the firm as it existed on December 31, 1946, and any fees paid by said clients would be the sole property of Mr. Brady and Mr. Nossaman; that Mr. Brady in determining, subject to Mr. Nossaman's approval, the amounts to be paid to Mr. Paulston and Mr. Anderson in any year would give careful consideration to every factor which had a bearing upon the amounts to be paid for their contributions, and that such determination would be fair and reasonable.

pleadings. The trial proceeded about three days before counsel for plaintiff asserted that the existence of a partnership was admitted by defendants' pleadings.

The court found (Finding 29) that: "Excepting for the label of 'partner' and the designations of 'member of the firm' and similar labels, the relationship and status of Mr. Paulston and Mr. Anderson to the partnership of Brady & Nossaman was substantially and in every material respect the same subsequent to January 1, 1947, as it existed prior to that day." The court also found (Finding 29) that there did not exist between Mr. Anderson, on the one hand, and Mr. Brady and Mr. Nossaman, on the other hand, any of the essential elements or any agreement which recognized the relationship of partners between them, or which gave to Mr. Anderson any of the rights which must exist in a partnership relationship such as coowners of partnership assets, the right to share in the profits, or any of the other factors the law requires must exist to entitle Mr. Anderson to the relief sought by him. Also there was a finding (No. 40) that there was no agreement between Mr. Anderson, on the one hand, and any of the defendants, on the other hand, that Mr. Anderson was or would be a partner with any of the defendants or a member of the partnership of Brady and Nossaman.

It seems that appellant is proceeding upon the basis that if the finding to the effect that he was not a partner is contrary to defendants' pleadings or is not supported by the evidence the judgment should be reversed. It is to be noted that the judgment does not rest solely upon that finding. There were many additional findings pertaining to the terms of the oral agreement under which plaintiff was to render legal services in the office of Brady and Nossaman, and pertaining to the conduct of the parties in the matter of the agreement after the agreement was made. As above stated, there were detailed allegations in defendants' pleadings relative to the terms of the agreement and the conduct of the parties after the agreement. Plaintiff does not challenge those additional findings. The substance of several of those findings is stated in the following three paragraphs.

The court also found that about November, 1946, Mr. Brady, with the concurrence of Mr. Nossaman, extended an invitation to plaintiff to become a member of the firm of Brady and Nossaman, and that the terms, conditions, and limitations of the invitation were evidenced by conversations, and by the acts, conduct and relationship of all parties. Those terms,

conditions, and limitations were as follows: The relationship would be effective as of January 1, 1947. Plaintiff would not be permitted to purchase or own any interest in the assets of the firm or to make any capital investment therein. Plaintiff would receive from the firm payment for services as follows: He would continue to receive for his services as in the years prior to January 1, 1947, such sums of money as he might request from time to time during the fiscal year, in amounts to be approved by Brady and Nossaman. At the close of each fiscal year he would be paid such additional sum, over and above the payments made during the year, as Brady and Nossaman would fix and determine would be reasonable to be paid to him for services rendered during the year. The fees received by the firm, including fees for services of plaintiff, would continue to be deposited as in previous years in the Citizens National Bank in the name of Brady and Nossaman, and that plaintiff would have no ownership in said fees so deposited and would not be permitted to withdraw money from the account. Each year, after paying plaintiff (and Mr. Paulston and Mr. Shaw), Mr. Brady and Mr. Nossaman would determine between themselves, pursuant to their agreement, the distribution of the residue of the net earnings of the firm, and such distribution would be made without consultation with or consent of plaintiff. The firm would not make any accounting or report to plaintiff of income, disbursements, assets or liabilities of the firm. Mr. Brady and Mr. Nossaman were to be the sole judges of the division and distribution of said residue of the income. Plaintiff would not have any authority to enter into contracts on behalf of Brady and Nossaman without the consent of Brady and Nossaman. Plaintiff would have no authority to make any arrangements respecting the employment or compensation of the office staff, or junior or associate attorneys. On law business originated by plaintiff any fees paid by those clients would be the property of the Brady and Nossaman firm, and plaintiff would have no claim or interest in said fees. Plaintiff (or Mr. Paulston or Mr. Shaw) would not carry on any private practice for his own account. At the end of each fiscal year the sum determined by Brady and Nossaman to be paid to plaintiff was to include full payment for all services rendered by him during the year irrespective of whether the matter upon which he had performed services was completed or incompleted or whether the clients for whom the services were rendered had paid the firm for such services

rendered by plaintiff. Plaintiff was not to have access to the books of account.

The court also found that: Plaintiff did not own any interest in the assets of the firm and did not make any capital investment therein. At the end of each fiscal year, after plaintiff (and others) had been paid reasonable sums for services, Mr. Brady and Mr. Nossaman determined the distribution of the residue of the net earnings of the firm, without consulting plaintiff. None of said residue of income was paid to plaintiff and no request was made by him that any part thereof be paid to him. The firm did not make any accounting or report of income or other financial matters to plaintiff. As of December 31, 1946, the bank balance, subject to check by Brady and Nossaman, was approximately $30,000, and the value of other assets of the firm, including uncollected fees, was between $150,000 and $200,000. Mr. Brady and Mr. Nossaman employed the office staff without consulting plaintiff. Plaintiff did not make any claim to title or ownership of any part of the assets. The sum determined and paid by Brady and Nossaman during and at the end of each fiscal year to plaintiff included full payment for all services rendered by him during the year, irrespective of whether any matter upon which he had been working was completed or whether the clients had paid for the services. Plaintiff had no right of access to the books of account, and prior to November 30, 1951, plaintiff never sought access to or information respecting the books. On December 4, 1951, when plaintiff severed his connection with Brady and Nossaman he requested information respecting the financial affairs of the firm for the year 1951. The aggregate amounts paid to plaintiff by the firm for each of the fiscal years from 1947 to 1951, inclusive, was a fair and reasonable sum for all services rendered by him to the firm during all of said years including any legal business originated by him for the firm. With the exception of the year ending November 30, 1951, plaintiff accepted said sums so paid to him in full satisfaction for all sums due or to become due to plaintiff from the firm for all services rendered in said years. After January 1, 1947, financial affairs, records, and accounts continued as they had been carried on prior to that date. Prior to December 4, 1951, when plaintiff severed his connection with the firm, plaintiff had not asked Mr. Brady or Mr. Nossaman for information regarding the financial affairs of the firm. On said December 4 plaintiff did not express any dissatisfaction with respect to the sums he received

for the prior years. About November 30, 1951, when plaintiff and Mr. Brady were discussing the amount which would be equitable to be paid to plaintiff for 1951, plaintiff's sole complaint was that he was entitled to more than $16,750 because his services produced about $42,000 for the firm that year. The $42,000 received by the firm during that year was for services performed by plaintiff in years prior to 1951 and for which he had been fully paid.

The court also found that at the time of the trial Brady and Nossaman made a fair, accurate and complete accounting upon all dealings and transactions between plaintiff and the firm, including the matters put in issue in the cross-complaint and the answer thereto.

It thus appears, according to said additional findings, that there was a complete agreement as to the basis of plaintiff's compensation, that the agreement was mutually performed, and that plaintiff was paid the full compensation he earned and agreed to accept. Those findings are supported by the evidence. Plaintiff's right to compensation depended upon the agreement which he made. The conversation which was the basis for plaintiff's claim that he is entitled to additional compensation was brief. According to plaintiff, Mr. Brady said that he and Mr. Nossaman had decided that it would be a good idea for plaintiff to become a member of the firm. According to Mr. Brady, he told plaintiff that he had talked to Mr. Nossaman about asking plaintiff if he would like to become a partner of a very restricted type; that plaintiff replied that he would like to; that Mr. Brady said the financial arrangement in the future would be the same as it had been in the past, and that he thought that plaintiff's being called a partner would lend to plaintiff's prestige. There was nothing in the conversation to indicate that plaintiff would be entitled to share in any specified portion of the profits, or that he acquired any interest in the assets of the firm, or that he assumed any additional responsibility. It could be concluded from the conversation that there would be no change in the financial arrangement that had existed during the preceding three years. With the exception of the year 1951 (when the relationship ended), plaintiff did not object to the manner in which his compensation was determined. Whether or not plaintiff be regarded as a partner, his compensation was to be determined in the same manner, that is, it was to be determined by Mr. Brady with the approval of Mr. Nossaman, as it had been determined prior to January 1, 1947. In view

of the agreement regarding plaintiff's compensation, as found by the court, it is not necessary to determine whether the court erred in finding that he was not a partner. In *Coward* v. *Clanton*, 122 Cal. 451 [55 P. 147], wherein there was a question whether a partnership existed, it was said (pp. 454-455) that often it is not necessary to determine whether a partnership exists; that a contract of partnership is, as to the parties, like any other contract, and the duties and liabilities imposed are to be deduced by its terms; and that, "This idea was expressed by Mr. Justice Lindley in *Walker* v. *Hirch*, 27 Ch. Div. 260. He said: 'Persons who share profits and losses are, in my opinion, properly called partners; but that is a mere question of words; their precise rights in any particular case must depend upon the real nature of the agreement into which they have entered.' " ▆ Irrespective of whether the court erred in finding that plaintiff was not a partner, the additional findings support the judgment insofar as it determines that plaintiff was not entitled to additional compensation. ▆ "If one or more of the findings, supported by substantial evidence sustains the judgment, . . . questions relative to other findings are immaterial." (*Luckhardt* v. *Mooradian*, 92 Cal.App.2d 501, 520 [207 P.2d 579]. See also *Mershon Co.* v. *Pachmayr*, 88 Cal.App.2d 901, 904 [199 P.2d 687].)

Appellant also contends that the court erred in determining the amount due under the cross-complaint. After Mr. Anderson said he was withdrawing from the firm, Mr. Brady requested him to complete certain matters on which Mr. Anderson had been working. Mr. Anderson agreed to complete the matters. While he was rendering services in those matters, he occupied an office of the firm about three and one-half months (until March 14, 1952). Then he moved to his own office and thereafter completed the matters. During the time he was completing those matters he received fees from the clients in the amount of $20,397.91, which amount he held pending a final accounting under the alleged partnership agreement. The cross-complaint pertained to the money received under those circumstances.

The court found that plaintiff had received $20,397.91; there was no agreement regarding the compensation to be paid for those services of plaintiff; the plaintiff devoted 590½ hours in performing the services—that 355 of those hours were spent in performing services in the firm's office, and 235½ hours were spent in performing services in plaintiff's office; the reasonable compensation for services rendered in the firm's

office was $15 an hour, and the reasonable compensation for services rendered in his office was $20 an hour; the reasonable value of his services in completing the work was $12,038, which included $695 for services in three cases originated by him, and also included $702.50 paid by him to assistants in his office; it was equitable that the $12,038 be applied as an offset against the $20,397.01, and that the difference between those amounts, namely, $8,359.91 was due from plaintiff to the firm.

Appellant argues that the amount of compensation, as found by the court, was not reasonable; that compensation based on $15 to $20 an hour gives no consideration "to the worth of the cases worked on" by him. Mr. Brady testified that in his opinion $15 an hour was the reasonable value of the services rendered in the firm's office, and $20 an hour was the reasonable value of the services rendered in plaintiff's office. The trial judge asked plaintiff his opinion as to the reasonable value of the services performed by him after November 30, 1951 (in completing the cases). He replied that he could not answer the question. The question as to the reasonable value of the services was a question of fact for the trial court. The evidence was sufficient to support the finding as to the amount due under the cross-complaint.

Appellant also contends that the court abused its discretion in denying plaintiff's motion to amend his pleadings. The motion to amend appears on pages 914 and 915 of the reporter's transcript. As above shown, the issue as to whether there was a partnership was tried first. The trial proceeded approximately five days as to that issue, and then the court announced its decision thereon. Then, after an adjournment of the trial for approximately three weeks, the trial proceeded on the cross-complaint. During the fifth day of the trial on the cross-complaint, plaintiff made the motion to amend. In making the motion counsel for plaintiff said: "[B]y reason of the ruling . . . with regard to the issue of partnership . . . I am surprised by the ruling and I ask leave at this time to amend our pleadings by way of answer and counterclaim . . . to include any and all matters which, except for the finding . . . that the plaintiff Anderson was not a partner, would have been his personal law business during the entire period from January 1, 1947, down to the present time, and ask for affirmative relief in his behalf for moneys received by the law firm of Brady and Nossaman . . . upon the basis that he was induced to believe . . . that he was a bona fide partner . . . or upon the principle of moneys had and received which were taken

by them and retained upon the mistaken fact by Mr. Anderson that he was a partner.'' Prior to the trial plaintiff made a motion for an order permitting him to inspect the books of the firm. Affidavits were filed in support of and in opposition to that motion. The motion was denied. Plaintiff took the deposition of Mr. Brady. In view of those affidavits, the deposition, and the extended trial that preceded the motion to amend, it is apparent that the issues were well defined, that it was known that defendants were asserting that plaintiff had been fully paid each year, and that plaintiff had ample opportunity prior to the tenth day of trial to make a motion to include an additional issue. It does not appear that the motion was based upon any facts which were not known to plaintiff for a considerable time prior to the time the motion was made. The court did not abuse its discretion in denying the motion to amend.

The judgment is affirmed.

SHINN, P. J.—I concur. The court found that plaintiff made a certain agreement with defendants as to his interest in the firm, operated under it for five years, and was paid in full. That was his entire case against the defendants. I cannot understand why the court made forty (40) findings of evidentiary facts and conclusions, comprising forty-nine (49) full, closely typed pages of the clerk's transcript, which added nothing but confusion to the findings of the ultimate facts. It is always presumed on appeal that the trial court gave effect to the evidence which logically tended to establish the ultimate facts found. When this rule can be properly applied evidentiary findings can serve no good purpose.

On appeal, plaintiff does not even mention the findings respecting the terms of the partnership agreement and its full performance, which, alone, defeat his claims against the defendants under that agreement. This seems to me to be a clear concession that, as to his claims as a partner, the evidence supports the findings and the findings support the judgment.

Vallée, J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied July 2, 1957, and appellant's petition for a hearing by the Supreme Court was denied July 31, 1957.