CALIFORNIA MOTOR EXPRESS, LTD., Plaintiff and Respondent, v. CHOWCHILLA UNION HIGH SCHOOL DISTRICT, Defendant and Appellant.

Everett L. Coffee, County Counsel, and Roy E. Wolfe, Assistant County Counsel, for Defendant and Appellant.

Richard D. Maltzman and Eisner & Titchell for Plaintiff and Respondent.

STONE, J.—This is an appeal by the Chowchilla Union High School District from a judgment in favor of respondent, California Motor Express, a common carrier, for freight charges in the sum of $1,182.67. The shipping charges arose by reason of the transportation of drums of asphalt compound to be used on tennis courts. The consignor was Midwest Company of Chicago, from whom the material was ordered by one Neal E. Wade, the former superintendent of schools in Chowchilla. The total purchase price exceeded $3,000 and the evidence disclosed that Wade's authority to order materials was limited to an expenditure of $1,000. This limited authority was based, for practical purposes, upon Education Code, section 18051, now numbered 15951. This code section at the time of the purchase required school districts to advertise for competitive bids if work to be done or materials to be supplied require an expenditure in excess of $1,000. District contends that the purchase order was invalid because it violated Education Code, section 18051, and because Wade, as agent of District, exceeded the scope of his authority. We believe this contention is valid as between Midwest and District.

However, at the time of shipment Midwest, as consignor, signed a nonrecourse clause in the bill of lading which provided that the shipping charges were to be paid by the consignee. Shipping by a bill of lading with a signed nonrecourse clause is authorized by the Interstate Commerce Commission acting within power conferred by the Interstate Commerce Act. (49 U.S.C.A. § 323.) Section 7 of the Uniform Bill of Lading reads as follows:

"The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property; but, except in those instances where it may lawfully be authorized to do so, no carrier shall deliver or relinquish possession at destination of the property covered by this bill

of lading until all tariff rates and charges thereon have been paid. The consignor shall be liable for the freight and all other lawful charges except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation shall make delivery without requiring such payment, the consignor (except as hereinafter provided) shall not be liable for such charges. . . ."

■ California Motor Express contends that since the shipment was made through interstate commerce and pursuant to a uniform bill of lading, District is bound by the nonrecourse clause regardless of the validity of the contract of purchase between consignor and consignee. Express cited several federal cases, including United States Supreme Court decisions, in support of this proposition. However, a careful reading of the cases cited discloses that the court in each instance presupposed a valid contract between the consignor and the consignee. We have found no case holding that a consignor can, by unilateral action, burden a consignee with shipping charges for goods which have not been ordered.

■ Express, however, makes the additional argument that regardless of the validity of the purchase order between Midwest and District, Express is an innocent third party. That is, Express is entitled to collect its shipping charges because District, as consignee, accepted the goods. This, asserts Express, misled it, as carrier, to believe that District accepted the goods pursuant to the nonrecourse clause in the bill of lading which was delivered to District along with the goods. District denies liability upon the ground there was no valid acceptance of the goods because the bill of lading was signed by a school janitor who had no such authority. Further, it is alleged that authority to accept goods was limited to materials authorized to be purchased. On cross-examination the superintendent of District testified as follows:

"Q. Who normally signs for shipments that are delivered at the school? A. Whoever happens to be there at the time will sign for goods that come in.

"Q. Has anybody ever been told that when goods come in that someone with authority should be notified so they can come down and sign for it? A. No. That should necessitate some explanation.

"Q. Well, if you would like to, feel free. We want to get

the story. A. We do not order goods without a purchase order, and purchase orders must be ratified by the Board. Any goods that are delivered are therefore delivered on the basis of a purchase order which has been approved by the Board. Therefore anybody signing for such goods is considered to be in order.

"Q. But does the person who signs for this goods, like Mr. Tynio at this particular time, does he have knowledge that goods that are being delivered and for which he is signing were authorized by the Board? A. No."

The record reflects that after the material was delivered to the school and signed for by the janitor, Mr. Wade, the superintendent, impounded the goods upon the school premises. He then notified the consignor that District would not pay the shipping charges. However, no objection, no notice that the freight charge was improper, and no refusal to pay was given Express until April 27, 1957. This was exactly seven months after the date of delivery. This notice was not timely as a refusal to accept delivery of the material or to claim nonliability under the bill of lading.

Even though it be conceded that the janitor had no authority to accept delivery of the goods, a question of fact which the trial court decided adversely to District, and further, if it be conceded that Mr. Wade had no authority to impound the material for seven months before notifying carrier, nevertheless, under the doctrine of ostensible authority, District is precluded from denying liability for the freight charges. Ostensible authority is defined by Civil Code, section 2317, as follows: "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."

The conditions under which a principal is bound by the acts of his agent under the theory of ostensible or apparent agency are delineated in Civil Code, section 2334, which provides: "A principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof."

In applying the foregoing provisions of the Civil Code, the courts of California have adopted the principle expressed in section 261 of the Restatement of the Law of Agency. ▇▇ In *Rutherford* v. *Rideout Bank*, 11 Cal.2d 479, at pages 483-484

[80 P.2d 978, 117 A.L.R. 373], it is said: "The rule is clearly stated in the Restatement of the Law of Agency, sections 261 and 262.

"Section 261: 'A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.'

"The illustrations and the comment found under these two sections are convincing. Under section 261 it is said: 'The principal is subject to liability under the rule stated in this section although he is entirely innocent, although he has received no benefit from the transaction, and, as stated in section 262, although the agent acts solely for his own purposes. Liability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him.' " (See also *Filippi* v. *McMartin,* 188 Cal.App.2d 135, 138 [10 Cal.Rptr. 180]; *Duarte* v. *Postal Union Life Ins. Co.,* 75 Cal.App.2d 557, 573 [171 P.2d 574]; 1 Witkin, Summary of Calif. Law, Agency & Employment, § 80, p. 454.)

Since the janitor who signed the bill of lading had apparent authority to accept the goods, and since notice to the contrary was not given to Express for seven months, District is liable for the shipping charges.

District asserts that the freight carrying charge is invalid for the same reason the original purchase order was invalid, namely, that it exceeded $1,000 and was in violation of section 18051 of the Education Code. However, the competitive bidding provisions of the Education Code do not apply to interstate freight rates. These charges come within the scope of the Interstate Commerce Act, and as such they are fixed and made uniform by the Interstate Commerce Commission. The purpose of fixing uniform freight rates in interstate commerce is to prevent competitive bidding and eliminate the evils which attend rate cutting. Thus the District, if it sought competitive bids for freight charges, would violate the Interstate Commerce Act. Additionally, the competitive bidding sections of the Education Code are not here applicable because freight rates are fixed and uniform, so that no advantage could accrue to District by competitive bidding.

(*Kennedy* v. *Ross*, 28 Cal.2d 569, 581 [170 P.2d 904] ; *Cobb* v. *Pasadena City Board of Education*, 134 Cal.App.2d 93, 95 [285 P.2d 41].)

The judgment is affirmed. The appeal from the order denying a new trial, a nonappealable order, is dismissed.

Conley, P. J., and Brown, J., concurred.