[Civ. No. 21396.   First Dist., Div. Two.   Jan. 19, 1965.]

CAROLINE A. REUSCHE, Plaintiff, Cross-defendant and Respondent, v. CALIFORNIA PACIFIC TITLE INSURANCE COMPANY et al., Defendants, Cross-complainants and Appellants.

732

Landels, Ripley, Gregory & Diamond and Philip J. Gregory for Defendants and Appellants.

George L. Cooke for Plaintiff and Respondent.

TAYLOR, J.—This is an appeal from an order granting a new trial on general grounds to respondent, Caroline Reusche. Respondent filed a complaint in this action to determine the validity of a promissory note and deed of trust forged by her agent, George Husack. Appellant, California Pacific Title Insurance Company, the title insurer and trustee of the deed of trust, and Irving and Florence Holcenberg, payees of the note and beneficiaries of the deed of trust, answered and cross-complained, contending that respondent was bound by the illegal acts of her agent. Appellants obtained judgment against respondent Reusche and now argue that the trial court abused its discretion in granting a new trial.

The order granting the motion for a new trial did not specify that it was based upon the insufficiency of the evidence, and it is, therefore, conclusively presumed that it was not based on that ground (Code Civ. Proc., § 657). In fact, respondent's contention on the motion was that the trial court's findings were confusing and could not be sustained by the record as a matter of law. The rule that on appeal

every intendment is in favor of the order granting a new trial is not applicable where the question presented is purely one of law (*Annin* v. *Belridge Oil etc. Union,* 119 Cal.App.2d Supp. 900, 905 [260 P.2d 295]), ██ and if there is any substantial evidence to support the judgment, the new trial order must be reversed unless some error of law is actually demonstrated (*Thompson* v. *Guyer-Hays,* 207 Cal.App.2d 366 [24 Cal.Rptr. 461]; *Stoddard* v. *Rheem,* 192 Cal.App.2d 49, 53 [13 Cal.Rptr. 496]; *Malkasian* v. *Irwin,* 61 Cal.2d 738 [40 Cal. Rptr. 78, 394 P.2d 822]).

Viewing the evidence in a light most favorable to the judgment, the record discloses the following facts. Respondent first met George Husack in 1951. Subsequently, he acted as her agent, cotenant and manager of several properties, most of which had been sold by 1956; his offices were in her Mission Street property. In 1956, with his help, she found and purchased the property in question, an apartment house on LaPlaya Street in San Francisco. Husack received a commission of $2,500 from the seller but neglected to inform respondent for several months.

About August 1, 1956, Husack, without the knowledge of respondent, called Holcenberg seeking a loan at 10 per cent interest to be secured by a second mortgage on the LaPlaya Street property. Holcenberg, with his broker Pels, saw the property the following day and agreed to the loan. Before the transaction was closed, Pels called respondent and told her about the suggested $15,000 loan and encumbrance on the LaPlaya property. She told him she would discuss the matter with her agent Husack and answered "yes" when informed of the $750 brokerage commission. Husack represented to the Holcenbergs, their agent Pels, and the title company that he was authorized by respondent to arrange and consummate the loan transaction.

The title company prepared the documents and turned them over to Husack. On August 9, 1956, Husack executed the promissory note for $15,000 and the deed of trust to the LaPlaya property by forging respondent's signature and falsely acknowledging as a notary public that respondent had executed the deed of trust. The documents were recorded on August 10, 1956. Neither respondent, the title company nor Holcenberg was aware of the forgeries at this time. However, after the signed documents were returned, the title company noticed a change in the instructions, specifying that the check be forwarded to respondent's Mission Street address instead

of her Pine Street address as previously indicated. To verify this change, an officer of the title company called respondent. He identified himself and the transaction and she acquiesced in the mailing of the check to the Mission Street address.

Husack received the title company's check for $14,152.80, endorsed respondent's name thereon and deposited it in his "Life Investment Company Trustee Account." A bank official, Mallery, came to see respondent and showed her the check. She realized that Husack had signed her name and told Mallery that there was some mistake as she had not sold any property and was not entitled to the money. She immediately called Husack who informed her that the check related to the sale of the Montezuma Street property on which she had loaned him $3,000.

Respondent then called Mallery, told him everything was all right and, at his request, sent the bank a letter dated August 14, 1956, stating: "... everything is regular and meets with my approval. Mr. George J. Husack, Mgr. Life Investment Co. has Power of Attorney to transact business and affix my signature whenever my presence is not available." In fact, Husack had no power of attorney and respondent testified that she intended the letter to refer only to his authority to sell the Montezuma Street property. On August 17, 1956, respondent received a check for $3,345 from Husack, allegedly from the sale of the Montezuma Street property but in fact drawn on the proceeds of the title company check disbursing the Holcenberg loan.

In September 1956, respondent received a telephone call from a Mr. Murphy about insurance and he told her that a $15,000 loan on the LaPlaya property was disclosed by the records. She referred this matter to Husack who gave her a false explanation. On April 1, 1957, Holcenberg called her about the expiration of the insurance and she told him to contact Husack. On April 3, respondent received the new insurance policy which referred to the second mortgage. On April 12, 1957, Holcenberg again called her to tell her that the loan payments had not been made since February and he had been unable to contact Husack who had made prior payments. Respondent, allegedly in confusion and fearful of losing the property, made several of the loan payments totaling $800.

At the trial, Husack admitted the forgery of the note and deed of trust, and the acknowledgment of respondent's signature; he further stated that he had no authority or power of attorney and admitted giving respondent a fictitious explana-

tion for the title company check and keeping her in ignorance of the entire loan transaction until about six months later (January 1957). It was stipulated that at the time of the $15,000 loan, respondent did not need the loan as she had ample funds and a large equity in the LaPlaya property and that the Holcenbergs had been completely reimbursed by the title company on January 14, 1958, and had assigned their interest in this matter to the title company.

The findings of the trial court indicate that the judgment holding respondent Reusche responsible on the forged note and deed of trust was based on ratification, estoppel and the agent's ostensible authority. If there is substantial evidence to support the judgment on any one of these grounds, the judgment must be sustained and the order granting the new trial reversed (*Anderson* v. *Brady,* 151 Cal.App.2d 545, 556 [312 P.2d 37]).

### OSTENSIBLE AUTHORITY

Ostensible authority is defined by section 2317 of the Civil Code as such authority ''. . . as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.'' ■ Liability of the principal for the ostensible agent's acts rests on the doctrine of estoppel and its essential elements are representation by the principal, justifiable reliance thereon by the third party and change of position or injury resulting from such reliance (Civ. Code, § 2334; *Ernst* v. *Searle,* 218 Cal. 233, 236-237 [22 P.2d 715]; *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412 [159 P.2d 958]). ■ A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud. ■ The principal is liable although he is entirely innocent, although he has received no benefit from the transaction, and although the agent acts solely for his own purposes. ■ Liability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that, from the point of view of the third persons, the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him (Rest. 2d Agency, §§ 261, 262; *Rutherford* v. *Rideout Bank,* 11 Cal.2d 479, 483-484 [80 P.2d 978, 117 A.L.R. 383]; *California Motor Express, Ltd.* v. *Chowchilla Union High Sch. Dist.,* 202 Cal.App.2d 314-315 [20 Cal.Rptr. 768]). ■ The law reasons that where one of two innocent parties must suffer, the loss should be accepted by the principal

who is responsible for the selection of the agent and for the definition of his authority (*Warshauer* v. *Bauer Construction Co.,* 179 Cal.App.2d 44, 49-50 [3 Cal.Rptr. 570]).

In the instant case, Husack represented to the lenders and their agents that he had authority to negotiate the loan on the LaPlaya property. The telephone calls from Pels and the title company in which they disclosed this transaction to respondent and in which she failed to disavow, but rather impliedly confirmed Husack's agency, constituted a sufficient representation to justify the trial court's finding of ostensible authority. The size of respondent's equity in the property did not require that the lender look further into the transaction nor were there any facts to indicate that the transaction was not regular on its face.

### RATIFICATION

Ratification is the subsequent adoption by one claiming the benefits of an act, which without authority, another has voluntarily done while ostensibly acting as the agent of him who affirms the act and who had the power to confer authority (Civ. Code, §§ 2310, 2312). A principal cannot split an agency transaction and accept the benefits thereof without the burdens (*Price* v. *McConnell,* 184 Cal.App.2d 660 [7 Cal.Rptr. 695]).

Here, respondent received a check from Husack in the amount of $3,345 upon his representation that this money was for the sale of the Montezuma Street property. Thereafter, she learned that these were part of the funds obtained on the forged note and to this date she has made no offer to return this sum, but retains it with full knowledge of its source and character.

Respondent argues that no agency by ratification (Civ. Code, § 2307) was created here since she did not know the true source of the wrongfully obtained funds when she accepted them. Ordinarily, the law requires that a principal be apprised of all the facts surrounding a transaction before he will be held to have ratified the unauthorized acts of an agent. However, where ignorance of the facts arises from the principal's own failure to investigate and the circumstances are such as to put a reasonable man on inquiry (*Hutchinson Co.* v. *Gould,* 180 Cal. 356, 358 [181 P. 651]), he may be held to have ratified despite lack of full knowledge (*Volandri* v. *Hlobil,* 170 Cal.App.2d 656, 659 [339 P.2d 218]).

Respondent further argues that there can be no ratification

of a forgery as a forger neither intends nor pretends to act for the principal. While intervening criminal acts in some cases may supersede the principal's negligence, the test is whether the actor should have realized at the time of his negligent conduct that there was a likelihood that as a result thereof, a third person might commit an intentional tort or crime. The principal need not foresee the precise injury or exact manner in which it occurs. It is sufficient if the result is within the orbit of risk created by the principal (*Barclay Kitchen, Inc.* v. *California Bank*, 208 Cal.App.2d 347, 355 [25 Cal.Rptr. 383]).

In the instant case, after the telephone calls from Pels and the title company, respondent did not know all of the details of the loan transaction. However, when the bank showed her the check from the title company before crediting the amount to Husack's account, she had full knowledge of the check and the forgery of her endorsement. We think that her failure at this point to make reasonable inquiries of the title company and lender practically insured the completion of the fraudulent transaction, that she should have realized the apparent risk of the agent's additional wrongdoing, and that her inaction and her conduct thereafter in accepting the benefits constituted ratification under the foregoing rules.

## ESTOPPEL

Respondent argues that the doctrine of estoppel cannot be applied to her as she herself is blameless. Section 3543 of the Civil Code provides that "[w]here one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." Misplaced confidence has been held to be negligence within section 3543 and has resulted in the estoppel of a true owner from asserting title against an innocent party (*Asp* v. *Lowry*, 117 Cal.App.2d 81, 85 [254 P.2d 967]; *Phelps* v. *American Mortgage Co.*, 40 Cal.App.2d 361 [104 P.2d 880]). Estoppel has been invoked where one has been induced by the dilatory or negligent conduct of another to refrain from taking such action as lay in his power to retrieve his position and save himself from loss (*Benner* v. *Industrial Acc. Com.*, 26 Cal.2d 346, 349 [159 P.2d 24]; *Crittenden* v. *McCloud*, 106 Cal.App.2d 42, 48 [234 P.2d 642]).

Here, respondent's conduct in writing a letter to the bank approving the check which she knew had actually been forged without further inquiry of the lender or title company constituted misplaced confidence in her agent Husack and was

negligent conduct of inducement, justifying the application of estoppel (*Merry* v. *Garibaldi*, 48 Cal.App.2d 397 [119 P.2d 768]).

Respondent's contention that the Holcenbergs have no standing on this appeal is entirely without merit. ■ A litigant does not lack standing merely because he has been fully compensated by an insurer (*Greene* v. *M. & S. Lumber Co.*, 108 Cal.App.2d 6, 11 [238 P.2d 87]; *Anheuser-Busch, Inc.* v. *Starley*, 28 Cal.2d 347, 349 [170 P.2d 448, 166 A.L.R. 198]). ■ An action may be continued in the name of the original party even where he transfers his interest (Code Civ. Proc., § 385).

We conclude that there is ample evidence to sustain the judgment and the order granting the new trial is therefore reversed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied February 18, 1965, and respondent's petition for a hearing by the Supreme Court was denied March 17, 1965. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.