[Civ. No. 14730. First Dist., Div. One. Aug. 14, 1951.]

RUPERT G. CRITTENDEN, Appellant, v. ROY McCLOUD, Respondent.

Gordon K. Williams for Appellant.

McKee, Tasheira & Wahrhaftig, Ridley Stone and J. D. Cooper for Respondent.

BRAY, J.—Plaintiff appeals from a judgment quieting title in favor of defendant and cross-complainant.

### QUESTIONS PRESENTED

1. Estoppel. (a) As estoppel was not originally pleaded, did the court err in permitting testimony upon which to base an estoppel? (b) Was the evidence sufficient to establish estoppel?

2. Does the evidence support the court's finding of ratification?

### FACTS

As to most of the facts (except the fact of forgery of the deed to Mrs. Dugger) there was a direct conflict in the evidence. The facts and the reasonable inferences therefrom most favorable to the court's findings follow. In January, 1949, plaintiff received from one Taft Dugger a deed to an undivided one-half interest in the property described in the complaint which plaintiff filed to quiet title thereto against defendant McCloud. Plaintiff was Dugger's attorney and it was stipulated that he received the conveyance from Dugger with knowledge of the forged deed hereafter mentioned. His counsel also stated that if plaintiff were called to testify he would raise the privilege between attorney and client. Thus, it was admitted that plaintiff, so far as his rights are concerned, stands merely in the shoes of his grantor Dugger. Defendant McCloud bought the full interest in the property

through a real estate agent in July, 1947. He did not know either Mr. or Mrs. Dugger. The purchase price, $5,500, was deposited in escrow with the title company. Mrs. Dugger deposited in the same escrow a deed from herself to defendant purporting to convey the entire title to defendant. From the deposit, the title company paid off certain delinquent taxes, encumbrances and expenses, delivering a check for the balance, $2,497.62, to Mrs. Dugger. The title company recorded the deed from Mrs. Dugger to defendant, certifying the title to be in him. This brings us to the deed by which Mrs. Dugger appeared to have title. The title stood in Mr. and Mrs. Dugger as joint tenants. Mr. Dugger was a prisoner in Folsom. Mrs. Dugger went up to see him and talked about selling the property which was their home. He told her to sell it as he did not want to return upon his release to Oakland where the property is located. He also said that he did not consider the property his. In every letter she got from him he said ''Get rid of that place.'' She had with her a deed from him to her for him to sign. They saw the warden and asked permission for Dugger to sign. The warden denied the permission. Shortly thereafter, on July 21, 1947, Mrs. Dugger appeared at the office of cross-defendant Golden, who was a notary public. (In this action, defendant McCloud cross-complained against plaintiff, also Mr. and Mrs. Dugger, to quiet title to the whole of the property. He also cross-complained against Golden for damages. The court reserved judgment as to Golden. No appeal from this judgment was taken.) She introduced to the notary public, as her husband, a man who signed Mr. Dugger's name to a gift deed to her. The notary notarized it and she recorded it.

It was approximately three months after this that Mrs. Dugger received from the title company the check for $2,497.62. By that time Mr. Dugger was out of Folsom and living with Mrs. Dugger on the property. He went with her when she cashed the check and deposited it in the bank. He spent $200 of the money at Sacramento. The day she sold the property to defendant, she told Dugger about it. She had told him that she cleared a little over $2,000 on the place. After that they purchased a place at 1314 Foothill, taking the title in both names. Mr. Dugger joined in the instructions to that effect. Dugger made the first deposit, $50. While Dugger waited for her, Mrs. Dugger went to the bank and drew $2,000 out of the moneys deposited from the sale to defendant. Then together they went to the real estate office

and paid the $2,000 on the purchase price of the Foothill property. About a week after the payment of the purchase price, defendant went to the premises he had purchased. He saw Mr. and Mrs. Dugger in the room. He asked them when they were going to move. Dugger did not say a word, but Mrs. Dugger said she would move as soon as she could. Later, while Dugger was still on the premises, defendant discussed with him his painting the premises, but they could not come to terms. On another occasion Dugger came to see defendant and asked the latter if he had paid for the stove which was on the premises. Dugger did not appear at the trial. However, his deposition was read. He denied signing the Dugger to Dugger deed, although he stated that at Folsom, his wife had asked him to turn the property over to her and he told her he could not unless she got the warden to restore his civil rights. He denied that he knew about the sale of the property until October 12th when he came to Oakland from Folsom. He claims some friends told him about it. He then asked his wife and she said she had sold it and admitted having the deed signed by another person. He denied that she gave him any money when she met him at Sacramento. He also denied that he lived with his wife after he got out of Folsom. He stated he asked her what she did with the money she received from the sale but she did not give him an answer.

### Findings

The court found that defendant McCloud is the sole owner of the property and that plaintiff has no interest therein; that the deed from Dugger to Dugger is forged; that Taft Dugger "thereafter, by his conduct and representations and by accepting the proceeds derived by Rita Alberta Dugger as a result of said forged deed, with full knowledge of such forgery and of the source of said proceeds accepted by him, ratified said deed and is estopped to deny the validity thereof"; that plaintiff is not an innocent purchaser for value and likewise is estopped to deny the validity of the forged deed; that cross-defendant Golden, the notary public, was negligent, but that plaintiff had suffered no damage thereby, unless the judgment against plaintiff and in favor of McCloud should be reversed. The court reserved jurisdiction to determine the damage in that event.

1. Estoppel—(a) *Pleading.*

Plaintiff's complaint was in the ordinary form to quiet title to an undivided one-half interest in the property. De-

fendant answered denying plaintiff's interest and alleging that defendant was the sole owner. Defendant's cross-complaint as against plaintiff was in the usual quiet title form. As against cross-defendants Dugger and Dugger and Golden it set up that defendant McCloud purchased the property relying on the title evidenced by the recorded Dugger to Dugger deed; that plaintiff claimed said deed to be a forged one, and that if it is such, defendant McCloud has been damaged by the acts of Mrs. Dugger and the notary. Thus, as the pleadings stood at the beginning of the trial, no estoppel was pleaded. In his opening statement to the court defendant McCloud stated that an issue had been raised as to a *possible* forgery, and that he did not know whether there had been such. "It may be that we will be compelled to ask for an amendment to our complaint to conform to the proof, the reason being that we proceed on the assumption that there was no forgery. We presume the people did the right thing, so we will make that motion if the proof requires that it be made in good faith." At the end of the first day's trial, all parties stated that they had no further witnesses (the action, however, was not submitted). A discussion started between court and counsel in which the court stated that it was obvious that the deed was forged. Defendant then moved for permission to amend the cross-complaint to conform to the proof and set up estoppel and ratification. The court, while not finally ruling on this request, intimated that it would grant permission to amend. (At the end of the trial it granted permission to amend to conform to the proof and to set up estoppel and ratification. Defendant accordingly amended his cross-complaint.) Thereupon plaintiff objected to the court's granting permission to amend and to the case's being opened for evidence of estoppel or ratification as they had not been originally pleaded. The court overruled the objection to the admission of evidence.

Plaintiff contends that as estoppel was not pleaded originally the court erred in permitting the amendment and particularly in admitting testimony on the subject. "It is a well-settled principle of pleading that estoppel is an affirmative defense which must be affirmatively averred. . . ." (*Edgington* v. *Security-First Nat. Bank,* 78 Cal.App.2d 849, 857 [179 P.2d 640].) However, it does not necessarily have to be pleaded where the party in whose favor it exists at the time of preparing his pleading is without knowledge that his claim must ultimately rest on it. (*First Nat. F. Corp.* v.

*Five-O Drilling Co.*, 209 Cal. 569 [289 P. 844]; *Resetar* v. *Leonardi*, 61 Cal.App. 765 [216 P. 71].) In *Beckjord* v. *Traeger*, 3 Cal.App.2d 385 [39 P.2d 523, 41 P.2d 172], it was held (p. 387): ''It may be admitted that estoppel must ordinarily be pleaded but an inspection of the transcript reveals the fact that estoppel was discussed in the opening discussion of the case and in the testimony that followed and was in effect carried into the findings. In such circumstances it became an issue of the case as effectively as though it had been pleaded.''

It is apparent that at the time of filing his answer defendant did not know the true facts. He knew, of course, that plaintiff was contending that the Dugger deed was a forged one, but he did not know the truth of the matter, nor did he know the facts which appeared at the trial through the testimony of Mrs. Dugger, that Dugger had accepted the fruits of the transaction. It was the duty of the court when the true situation developed to allow the answer to be amended so that a fraud against defendant would not be permitted through legal technicalities. Moreover, at the very beginning of the case plaintiff was put on notice that such an amendment might be required, for defendant stated that while he was proceeding on the assumption there was no forgery he might be compelled to ask for an amendment to conform to the proof.

1. (b) *Evidence of Estoppel.*

Plaintiff's main contention that the evidence did not support a finding of estoppel is based upon the proposition that the sale had actually been made and defendant had parted with the purchase price before the acts occurred upon which the estoppel is based. Thus, contends plaintiff, defendant was not prejudiced by Dugger's acts. Apparently Dugger knew nothing of the sale until he came to Oakland on his release from Folsom at which time defendant had already paid the purchase price (although Mrs. Dugger testified she told him immediately the sale was made). Defendant probably could have salvaged the purchase price had Dugger told him of the forged deed as soon as Dugger learned of it. Defendant could then have proceeded against Mrs. Dugger for a recovery. It was Dugger's duty to speak at this time.

''An estoppel may arise from silence, but only where there is a duty to speak, and where the party upon whom such duty rests has an opportunity to speak and, knowing that the circumstances require him to speak, remains silent.''

(*People* v. *Ocean Shore Railroad, Inc.*, 32 Cal.2d 406, 421-422 [196 P.2d 570, 6 A.L.R.2d 1179].) After this time defendant improved the premises at a cost of about $600. It is interesting to note that Dugger at no time repudiated the transaction, until he executed the deed to plaintiff approximately 16 months after he had accepted a portion of the purchase price in cash and had joined in the use of $2,000 of it for the purchase of the new home taken in his name as well as his wife's. Dugger wanted the property to be in his wife's name so that she could handle the sale of it, for he testified that when she came to Folsom and asked him to sign the deed to her he told her to get the warden's consent. The evidence clearly shows that when defendant called at the Dugger house, about a week after payment of the purchase price, Dugger then knew of the transaction and remained silent when defendant asked how soon they would move, received $200 in cash, and participated in the purchase of the new property with the proceeds of the sale. Almost a year and a half later, Dugger attempted to profit from the transaction by purporting to convey a one-half interest in the property to his attorney. It must be remembered that the taxes and liens against the property have now been cleared off. To hold that Dugger's successor, who stands in no better position than Dugger would, is entitled to one-half of the property, would be unconscionable. It is quite apparent that plaintiff seeks, through a technicality, to gain an unfair advantage of defendant. Applicable here is the following statement in 10 California Jurisprudence, § 55, pages 515-516: "A commonplace maxim of equity, which has also escaped certification, is that which declares that he who comes into equity must come with clean hands. This maxim says 'that whenever a party, who as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere in his behalf, to acknowledge his right, or to award him any remedy.' "

The situation here is somewhat similar to that in *Merry* v. *Garibaldi*, 48 Cal.App.2d 397 [119 P.2d 768], where the owner of property, whose name was forged as maker and trustor of a promissory note and deed of trust, learned of the forgeries but by her silence prevented the lenders of the money paid to the forger from learning of the fraud in time to bring an action which might have permitted the

lender to recover. It was there held that the doctrine of equitable estoppel may be invoked by an innocent purchaser, in spite of the fact that ordinarily a forged instrument cannot carry title. ■ ''The owner of property cannot be divested thereof by a forged instrument, but his conduct in reference to the instrument may estop him from denying its validity.'' (*Blaisdell* v. *Leach*, 101 Cal. 405, 409 [35 P. 1019, 40 Am. St.Rep. 65].) See, also, *Baillarga* v. *Clark*, 145 Cal. 589 [79 P. 268, 104 Am.St.Rep. 75], where the deed was a stolen one. Although the sale had already taken place before Dugger appeared on the scene, his actions contributed to defendant's loss because they prevented defendant from learning the true facts at a time when he might have obtained relief and before he expended further moneys on the property. ■ The following statement from *Trout* v. *Taylor*, 220 Cal. 652 [32 P.2d 968], applies here (pp. 656-657) : ''An innocent purchaser taking a void instrument can, however, find protection in the doctrine of estoppel, where circumstances are presented which establish negligence or some other misconduct by the other party, which contributed to the loss. Section 3543 of the Civil Code provides broadly that 'where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer.' ''

2. RATIFICATION.

■ The court found that Dugger ratified the transaction by accepting the proceeds with full knowledge of the forgery. The evidence definitely shows this. But, contends plaintiff, sections 2309 and 2310 of the Civil Code require that the ratification must be in writing and there is no writing here. Such a rule would make the statute of frauds a shield for the guilty. ■ Where the elements of estoppel apply the statute of frauds ''would encourage rather than prevent the perpetration of frauds.'' (*Wilk* v. *Vencill*, 30 Cal.2d 104, 108 [180 P.2d 351]; see, also, *Corporation of America* v. *Harris*, 5 Cal.App.2d 452 [43 P.2d 307].)

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.