[Civ. No. 8923.   Third Dist.   Feb. 5, 1957.]

MINNIE SHURGER, Respondent, v. JOHN J. DEMMEL, et al., Appellants.

Wilke & Sapunor and Sherman C. Wilke for Appellants.

Lewis, Lewis & Lewis for Respondent.

PEEK, J.—Defendants appeal from an adverse judgment in an action instituted by plaintiff to have two deeds cancelled; one, a deed purported to have been made by her to her son, John J. Demmel, and a second deed from John to himself and Elizabeth, his wife.

The complaint is in two counts. The first cause sets forth certain alleged fraudulent representations made by John to plaintiff to obtain the deed from her. The second cause alleges that at all times therein plaintiff was the owner of the real property in question; that defendants claim an interest in the property adverse to her; that the claim is false and fraudulent and based upon a forged deed dated July 31, 1943; that she did not make or acknowledge the deed. By reference plaintiff includes the allegations of portions of the first cause that Elizabeth accepted delivery of the deed to John and herself with full knowledge of all of the facts surrounding the acquisition of title by John; that defendants

concealed the nature of the transfer from her to John; that defendants advised her she was the owner; that when she discovered the true facts in February, 1953, she demanded the restoration of the premises by reconveyance, but that the defendants failed and refused to do so.

Defendants' answer denies generally all of the material allegations of the complaint and affirmatively alleges laches. By amendment thereto they allege that the cause is barred by section 338, subsection 4, of the Code of Civil Procedure.

. The record shows that at the time of trial plaintiff, who was born in Hungary, was 82 years of age and John, her only living child, was 61. A daughter, who was also born of her first marriage, had died many years before. Her second husband died in 1942, leaving her a life estate in the home where she was then living. The property which is the subject of. this action was improved by her with a dwelling house in 1921. Except for a period of approximately six years, from 1932 to 1938, John and Elizabeth have continually resided therein. For the first few years of their occupancy, defendants paid plaintiff $35 per month for rent which was thereafter reduced to $25, which sum the defendants continued to pay up to the time this action was filed. During all of this time plaintiff paid the property taxes, the fire insurance premiums and the water bills. She and John had always been on friendly terms and she had reposed faith and trust in him. For safekeeping, she gave him all of her personal papers which included her deed to the property, a trust agreement between herself and a bank and her will which was dated in 1936. In 1940, at John's suggestion, she consulted Attorney H. N. Mitchell who thereafter represented her in certain legal matters involving the estate of a brother. According to her testimony, she never consulted Mitchell again and did not visit his office in 1943.

The instrument purporting to be the deed from plaintiff to John was executed on July 31, 1943, and acknowledged that same day before Attorney Mitchell as notary public. At the trial it was stipulated that Mitchell was deceased and that his signature on the acknowledgment was genuine. Plaintiff, however, testified that she had never signed a deed knowing it to be a deed; that the signature on the deed in question ". . . looks like mine, but I never signed that paper." She further testified that two or three years prior to the trial she had a conversation with Elizabeth in which she asked for an increase of $5.00 a month in the rent; that Elizabeth

told her she could not pay it and that the property was in John's name; that prior to this time she did not know the property was in his name; that when she paid the real property taxes she always took a prior statement with her and informed the clerk that she desired to pay the taxes on the property shown on such statement; that on this occasion when she went to the office to make payment, she found that she had forgotten to bring with her an earlier statement; and that when she asked for the current statement, she was told there was nothing assessed in her name. She thereafter had one of her roomers accompany her to the title company to verify this fact. The roomer, when called as a witness, testified that he did so accompany her to the title company. He further testified that this took place in February, 1953, approximately four months prior to the commencement of the action.

The findings of the trial court which are pertinent to the conclusion we have reached are that on July 31, 1943, John falsely and fraudulently secured from the plaintiff a false and forged deed purported to have been executed by her that day and purporting to convey the property to him; that plaintiff was unaware of the fact that she was signing a deed; that such fact was concealed from her by John; that thereafter the deed was recorded; and that on the same day John executed and delivered a grant deed conveying the property to himself and wife as joint tenants, which deed was likewise recorded.

It is the defendants' first contention that the evidence does not support the finding that John falsely and fraudulently secured from plaintiff a false and forged deed purported to have been executed by her. Assuming in accordance with defendants' contention that the trial court could only base its judgment in favor of plaintiff upon the second cause of action, nevertheless in view of her testimony and the inferences which could reasonably be drawn therefrom, we would be compelled to affirm the judgment.

It is well established that the owner of property cannot be divested thereof by a forged instrument. (*Crittenden* v. *McCloud,* 106 Cal.App.2d 42 [234 P.2d 642] ; *Montgomery* v. *Bank of America,* 85 Cal.App.2d 559, 564 [193 P.2d 475].) From the evidence produced by plaintiff, a reasonable inference can be drawn that the purported deed from plaintiff to her son was a forgery. It was shown that

shortly prior to the commencement of this action in 1953 she learned for the first time that the property was not in her name but was in the names of John and his wife. She had always paid the taxes on the property, the fire insurance premiums and the water bills. Although she testified that the signature to the deed looked like hers, she further testified that she had never knowingly signed a deed. Thus it may be inferred that her signature was obtained without her having knowledge that it was a deed. She further testified that she had no conversation with Mr. Mitchell, the notary public who acknowledged the deed, subsequent to the estate proceedings in 1940, and that she was not in his office in 1943.

Defendants also contend that the further findings of the trial court that neither cause of action was barred by section 338, subdivision 4, Code of Civil Procedure; that plaintiff did not discover the fact of the alleged false and forged deed until February, 1953; that a confidential relationship existed between plaintiff and her son; and that on the date the purported deed was executed, plaintiff was old and infirm and inexperienced in business matters and placed complete reliance upon her son, are not sustained. However, since we have concluded that even assuming the insufficiency of the evidence to support plaintiff's first cause of action which was predicated upon fraud, it necessarily follows that said section of the Code of Civil Procedure does not apply and the remaining challenged findings were wholly unnecessary to the conclusion of the court upon the second cause of action.

The judgment is affirmed.

Schottky, J., and Warne, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.