[Civ. No. 21870. Third Dist. Jan. 23, 1984.]

MARY M. WUTZKE, Plaintiff and Respondent, v.
BILL REID PAINTING SERVICE, INC., Defendant and Appellant.

**38**

---

Fred W. Kaiser and Estelle A. Schleicher for Defendant and Appellant.

Charles S. Hubbard for Plaintiff and Respondent.

---

**Opinion**

**EVANS, J.**—Defendant Bill Reid Painting Service, Inc. (Reid) appeals from a judgment which declared void a forged deed of reconveyance and

rendered Reid's deed of trust interest in the real property formerly owned by plaintiff Mary M. Wutzke (Wutzke) subordinate to the deed of trust held by Wutzke. We affirm.

FACTS

In January 1980, Wutzke sold to Sterling and Joan Miller a parcel of residential real property in Sacramento for $65,000; she received from the Millers an $8,000 down payment and a promissory note in the amount of $57,000 secured by a first deed of trust on the property. The Millers designated Mid-Cal Escrow Company (Mid-Cal) as trustee on the deed of trust; Wutzke was not made aware that Mid-Cal had been formed and was owned by the Millers. The trustee was authorized to reconvey the trust property only when the note it secured had been paid in full. That deed of trust was recorded February 4, 1980.

On February 21, 1980, Sterling Miller executed and caused to be recorded a deed of reconveyance which transferred unencumbered title to the property to himself and his wife; the document falsely represented that Mid-Cal had received from Wutzke, the beneficiary, "a written request to reconvey [the trust deed to the trustor], reciting that all sums secured by said Deed of Trust [had] been fully paid, . . ." To this document Miller signed the fictitious names of Howard Perry, as executive officer of Mid-Cal, and Caroline Wilson, notary.

Subsequently, Reid responded to an advertisement placed by the Millers in a local newspaper soliciting financial investments, and on April 30, 1980, invested $47,000 with the Millers in return for which the Millers executed a promissory note secured by a first deed of trust on the Wutzke home.

The Millers thereafter defaulted on the promissory notes given to Wutzke and Reid.[1]

At the conclusion of trial, the court found both Wutzke and Reid were "innocent parties" and that neither had been negligent in their dealings with the Millers; that the deed of reconveyance was a forgery and therefore void, to be given no force and effect; that the recording of the forged reconveyance caused it to appear that the title to the subject property in the name of the Millers was free and unencumbered; that Wutzke's deed of trust had priority over Reid's; that Wutzke was not estopped from claiming the deed of reconveyance was a forged document which should be cancelled; and that

---

[1]Prior to this time (Apr. 30, 1980) Wutzke had received three payments under the promissory note.

Wutzke was entitled to costs and attorney fees against the Millers as a further lien on the subject property. The court ordered judicial foreclosure with the proceeds therefrom to first satisfy the amounts due Wutzke. This appeal by Reid followed.[2]

## DISCUSSION

Although the reconveyance by the trustee exceeded its authority since the power to reconvey was limited and required full payment of the promissory note, the question presented is somewhat broader than the extent of the power of the trustee. The question focuses on the effect of a forged deed of reconveyance on a subsequent encumbrancer.

*Firato* v. *Tuttle* (1957) 48 Cal.2d 136 [308 P.2d 333], provides the contextual framework for the contentions presented in this appeal. In *Firato,* the trustee, a real estate broker, was authorized to reconvey the deed of trust to the trustor only if the loan had been paid in full, but instead she executed a deed of reconveyance when most of the loan remained unpaid, and fraudulently recited that full payment had been received. The beneficiary under the original trust argued the trust deed should be declared a first lien on the property even if holders of the reconveyed deed were innocent purchasers for value, relying on Civil Code section 870, which states: "Where a trust in relation to real property is expressed in the instrument creating the estate every transfer or other act of the trustees, in contravention of the trust, is absolutely void."

In addressing that argument the *Firato* court drew a distinction between conveyances that are merely unauthorized, which was the situation presented there, and those that are not only unauthorized but executed by means of an instrument which is "wholly void . . . [such] as where a deed has been forged or has not been delivered." (*Firato, supra,* at p. 139.) In the former instance, the court held that Civil Code section 2243[3] provided protection to bona fide purchasers for value who took without notice. As to the latter situation, where the instrument is "wholly void," the court simply noted that such instruments "cannot ordinarily provide the foundation for good title even in the hands of an innocent purchaser, . . ." (*Ibid.*)

## I

The preliminary issue we confront is whether the deed of reconveyance is "wholly void." California Uniform Commercial Code section

---

[2]The Millers and Mid-Cal were also sued but did not answer, and default judgments were entered against them.

[3]"*Every one to whom property is transferred in violation of a trust, holds the same as an involuntary trustee under such trust, unless he purchased it in good faith, and for a valuable consideration.*"

1201 defines an unauthorized document or signature as one made without actual or implied authority and "includes a forgery;" however, the act of forgery is not defined in the Commercial Code or otherwise for purposes of civil actions. In the present context, the term must be construed in accord with the reasonable understanding of a layman; in this instance, the instrument involved happens to fall squarely within the literal definition of forgery set forth in Penal Code section 470. That section provides, "Every person who, with intent to defraud, signs the name of another person, or of a fictitious person, knowing that he has no authority so to do, to, . . . [any] deed . . . or utters, publishes, passes, or attempts to pass, as true and genuine, any of the above-named false, . . . forged, . . . matters, . . . with intent to defraud, . . . is guilty of forgery." ■ In *People* v. *Porter* (1955) 136 Cal.App.2d 461, 467 [288 P.2d 561], this court stated that in order to establish forgery three essential facts must be proven: "(1) Intent to defraud, (2) making a false instrument by signing another's name without authority or the name of a fictitious person, or knowingly uttering same, and (3) the instrument on its face be capable of defrauding someone who might act upon it as genuine or the person in whose name it is forged." More succinctly, forgery is a "writing which falsely purports to be the writing of another, . . ." (*Generes* v. *Justice Court* (1980) 106 Cal.App.3d 678, 682 [165 Cal.Rptr. 222]; see also *Century Bank* v. *St. Paul Fire & Marine Ins. Co.* (1971) 4 Cal.3d 319, 321-322 [93 Cal.Rptr. 569, 482 P.2d 193].)

Reid argues that because Miller was president and chief executive officer of Mid-Cal, the trustee, he was not "without authority" to sign a fictitious name.

Such an argument is pure sophistry. The requirement that there be proof of lack of authority applies where the name of an *actual person* is signed, not to the situation where a fictitious name is signed. As explained in *People* v. *Porter, supra,* 136 Cal.App.2d at page 466: "The proof of lack of authority to sign the name of an actual person is necessary to prove the falsity of the instrument; if the person whose name is signed to the instrument is fictitious, proof of this fact is likewise proof of the falsity of the instrument." Thus, " " " . . . while one may sign a fictitious name which he has adopted for innocent purposes without being guilty of forgery, . . . if . . . fraud is shown, the fact that the name had been previously assumed by the one signing it [for any purpose] . . . will not prevent the signature being a forgery; . . .' " [Citation.]" (*People* v. *Lustman* (1970) 13 Cal.App.3d 278, 289 [91 Cal.Rptr. 548]; disapproved on other grounds in *People* v. *Ruster* (1976) 16 Cal.3d 690, 697, 699 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269].)

■ Moreover, Miller's "authority" to act on behalf of Mid-Cal, the trustee, was limited and defined by the terms of the trust deed. That deed authorized the trustee to reconvey the security only upon the written request of the beneficiary. Because Miller had not received such a request, the signing of *any* name, fictitious or otherwise, was unauthorized.

Reid relies heavily on *People* v. *Bendit* (1896) 111 Cal. 274 [43 P. 901], but that decision is factually inapposite. In *Bendit,* the defendant, falsely representing himself to be a collector for a business firm, signed a receipt for money in his own name, as the purported agent of the firm. In holding there was no forgery, the Supreme Court explained: "When the crime is charged to be the false making of a writing, there must be the making of a writing which falsely *purports to be the writing of another.* . . . [¶] . . . 'If a man accept or indorse a bill of exchange in the name of another, without his authority, it is a forgery. But if he sign it with his own name, per procuration of the party whom he intends to represent, it is no forgery; it is no *false making* of the instrument, but merely a false assumption of authority.' [Citation.]" (Italics in original; *id.,* at pp. 276-277; see *Century Bank* v. *St. Paul Fire & Marine Ins. Co., supra,* 4 Cal.3d at p. 327.) Here, Miller did not sign his own name but rather those of two fictitious persons, thereby executing a document "which falsely purports to be the writing of another." (*Generes* v. *Justice Court, supra,* 106 Cal.App.3d at p. 682.) The circumstances presented are more akin to *People* v. *Chretien* (1902) 137 Cal. 450 [70 P. 305], and *People* v. *Daniels* (1948) 85 Cal.App.2d 182 [192 P.2d 788], in which it was expressly held that the signing of a fictitious name to a deed with intent to defraud constitutes forgery.

We conclude as did the trial court that the deed of reconveyance executed by Miller was a forgery.

## II

We turn now to the question of which of the two innocent parties must bear the loss caused by the perfidy of the Millers.

In *Firato,* the court held that Civil Code section 2243 protected innocent purchasers for value who take without notice as against the original grantor. (See also *Huckell* v. *Matranga* (1979) 99 Cal.App.3d 471, 478 [160 Cal.Rptr. 177].) ■ As Reid correctly notes, an innocent encumbrancer is entitled to the same protection under section 2243 as an innocent purchaser (*Schut* v. *Doyle* (1959) 168 Cal.App.2d 698, 701 [336 P.2d 567]; *Ruth* v. *Lytton Sav. & Loan Assn.* (1968) 266 Cal.App.2d 831, 836 [72 Cal.Rptr. 521], mod. at 272 Cal.App.2d 24 [76 Cal.Rptr. 926].) The protection provided by Civil Code section 2243 is based on the equitable prin-

ciple that innocent encumbrancers and purchasers have a right to rely on the record title of the grantor (*Firato* v. *Tuttle, supra,* 48 Cal.2d at p. 140); however, that protection extends only to those who obtained good legal title. (*Id.,* at p. 139; *Trout* v. *Taylor* (1934) 220 Cal. 652, 656 [32 P.2d 968].) ▮ It has been uniformly established that a forged document is void *ab initio* and constitutes a nullity; as such it cannot provide the basis for a superior title as against the original grantor. (*Firato* v. *Tuttle, supra,* 48 Cal.2d at p. 139; *Trout* v. *Taylor, supra,* 220 Cal. at p. 656; *Burns* v. *Ross* (1923) 190 Cal. 269, 275 [212 P. 17]; *Cutler* v. *Fitzgibbons* (1906) 148 Cal. 562, 563-564 [83 P. 1075]; *Blaisdell* v. *Leach* (1894) 101 Cal. 405, 409 [35 P. 1019]; *Forte* v. *Nolfi* (1972) 25 Cal.App.3d 656, 674 [102 Cal.Rptr. 455]; *Kessler* v. *Bridge* (1958) 161 Cal.App.2d Supp. 837, 841 [327 P.2d 241]; *Shurger* v. *Demmel* (1957) 148 Cal.App.2d 307, 309 [306 P.2d 497]; *Crittenden* v. *McCloud* (1951) 106 Cal.App.2d 42, 50 [234 P.2d 642]; *Montgomery* v. *Bank of America* (1948) 85 Cal.App.2d 559, 564 [193 P.2d 475]; *Gioscio* v. *Lautenschlager* (1937) 23 Cal.App.2d 616, 619-620 [73 P.2d 1230]; 1 Miller & Starr, Current Law of Cal. Real Estate (rev. 1975) § 3:76, p. 465; see also 23 Am.Jur.2d (1965) Deeds, § 139, p. 169; Annot. (1954) 35 A.L.R.2d 944-959, and Later Case Service, and the out-of-state cases cited within.)

Reid notes that "in most of the cases [in which the interests of innocent purchasers have been barred] the deed was a *grant deed,* as *opposed* to a *trust deed.*" (Italics in original.)

Although the observation is accurate, it demonstrates a difference without a distinction. (See *Gioscio* v. *Lautenschlager, supra,* 23 Cal.App.2d 616; *Trout* v. *Taylor, supra,* 220 Cal. at p. 656; *Shurger* v. *Demmel, supra,* 148 Cal.App.2d 307; *Crittenden* v. *McCloud, supra,* 106 Cal.App.2d 42; *Montgomery* v. *Bank of America, supra,* 85 Cal.App.2d 559; *Orloff* v. *Mosher* (1944) 64 Cal.App.2d 6 [147 P.2d 675].) The fact that a deed of trust conveys a more limited interest in property than a grant deed (see *Hamel* v. *Gootkin* (1962) 202 Cal.App.2d 27, 29-30 [20 Cal.Rptr. 372]) does not mean that forged documents involving that interest should be treated differently than documents involving other interests. Indeed, decisional authority relative to forged instruments other than grant deeds uniformly hold such instruments to be void. For example, in *Burns* v. *Ross, supra,* 190 Cal. 269, the Supreme Court held that the forged assignment of a contract for the sale of real property was void, and the rights of the original owner of title to the contract were not defeated, even as to a bona fide purchaser. (See also *Forte* v. *Nolfi, supra,* 25 Cal.App.3d 656, holding a forged promissory note and deed of trust void.) ▮▮▮▮ In short, there is no reason in law or policy why the principle that forged documents are void

should not apply to any instrument through which an interest in property is passed.[4]

■ Since a trust deed obtained by means of forgery is void, it follows that any claim of title flowing from such a deed is void. This elementary legal principle makes clear the validity of the title of a subsequent purchaser or encumbrancer depends upon the validity of his grantor's title. In this case, Reid's claim to free and unencumbered title to the property depended upon the forged reconveyance, which was void. Consequently, the purported first deed of trust given to Reid must be subordinate to Wutzke's prior and valid deed of trust.[5]

### III

■ Based on the finding that Wutzke had not acted negligently, the trial court concluded she was not estopped from asserting superior title. However, Reid contends the trial court's finding of an absence of negligence is error.

■ It is settled that the doctrine of equitable estoppel "may be invoked by an innocent purchaser, in spite of the fact that ordinarily a forged instrument cannot carry title. 'The owner of property cannot be divested thereof by a forged instrument, but his conduct . . . may estop him from denying its validity.' [Citation.]" (*Crittenden* v. *McCloud, supra,* 106 Cal.App.2d at p. 50; see also *Common Wealth Ins. Systems, Inc.* v. *Kersten* (1974) 40 Cal.App.3d 1014, 1025 [115 Cal.Rptr. 653].) The principle of estoppel is based on Civil Code section 3543, which provides that "Where one of two innocent persons must suffer by the act of a third, he, by whose

---

[4]It is of no consequence that the forged reconveyance document was recorded. The rule is well established that where the "conveying instrument is void for such reasons as forgery or lack of delivery it does not gain efficacy by recordation even in favor of an alleged party taking in good faith, for value, and without notice." (Burby, Handbook of the Law of Real Property (3d ed. 1965) § 130, p. 324.) As summarized by Professor Cribbet: "Nor can recording give validity to a void deed or mortgage. [Fn. omitted.] Recording places on file, in a public place, the written evidence of a conveyance; if that conveyance was void for want of delivery, forgery, lack of capacity in the grantor due to infancy or insanity, etc., it is void still." (Cribbet, Principles of the Law of Property (2d ed. 1975) pp. 282-283.)

[5]Reid argues that "Upholding the trial court's judgment will have a devestating [sic] affect [sic] . . . on the entire real estate 'industry'," analogizing the situation to the medical malpractice crisis of a few years ago. This claim is patently specious. Provision is already incorporated into most title insurance policies for forgery. (Cal. Title Insurance Practice (Cont.Ed.Bar 1980) Policies, Reports, Guaranties, Indorsements, § 3.7, pp. 38-40.) Moreover, our decision does not enunciate a new or novel principle of real property law. We do no more than apply the well established rule that an innocent purchaser or encumbrancer does not recover as against the original owner when his grantor was without good title. If Reid believes relief is warranted in the interests of public policy the proper forum for making such a plea is the Legislature, not the courts.

negligence it happened, must be the sufferer." Reid relies upon *Asp* v. *Lowry* (1953) 117 Cal.App.2d 81 [254 P.2d 967], in which the court stated at page 85, "Misplaced confidence may be held to be negligence within the meaning of the maxim set forth in section 3543 of the Civil Code, . . ."

Reid's reliance on *Asp* is misplaced. While as a technical matter Mid-Cal became Wutzke's agent when it was designated as trustee (see *Fleisher* v. *Continental Auxiliary Co.* (1963) 215 Cal.App.2d 136, 139 [30 Cal.Rptr. 137]), Wutzke did not develop any sort of relationship with Mid-Cal which would justify attributing its wrongdoing to her. (Cf. *J. G. Boswell Co.* v. *W. D. Felder & Co.* (1951) 103 Cal.App.2d 767, 774 [230 P.2d 386]; *Reusche* v. *California Pac. Title Ins. Co.* (1965) 231 Cal.App.2d 731 [42 Cal.Rptr. 262].) Rather, Wutzke was herself a victim of fraud by the Millers' designation of an escrow company as trustee which they surreptitiously owned. Wutzke was no less an innocent party than Reid; both were the unwitting victims of an unscrupulous peculator. There was no basis for finding an estoppel.

## IV

Reid next argues that if Wutzke is entitled to her requested relief, e.g., a priority lien on the property, "she has received a windfall in the amounts already received by her [from the Millers]. Such a result constitutes a miscarriage of justice and should not be affirmed by this Court."

The judgment provides "for the sale of the property according to the law by a commissioner to be appointed by the court, with proceeds of sale [to] be applied in payment of the amounts due to plaintiff," i.e., the balance due on the promissory note and her costs and attorney fees. Once that debt is satisfied, other claimants and lienholders, such as Reid, the holder of a junior deed of trust, are automatically entitled to the surplus from the sale. (Code Civ. Proc., § 727; *Livingston* v. *Rice* (1955) 131 Cal.App.2d 1 [280 P.2d 52].) Thus, contrary to Reid's claim, Wutzke is entitled to no more than the balance due on the promissory note and her costs and attorney fees out of the proceeds of the sale of the home.[6]

Reid argues that the judgment should be modified to permit him to recover the rents that have accrued in a fund established by the parties by stipulation; he contends that to allow Wutzke to recover the rents would constitute a windfall. This problem is specifically covered by former Code of Civil

---

[6]Reid also has statutory reinstatement and redemption rights. (Former Code Civ. Proc., §§ 700, 701 [in effect at the time]; Civ. Code, §§ 2903-2905; see generally, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 1979) Judicial Foreclosure, §§ 5.49, 5.52, 5.73-5.75, pp. 224-226, 244-247.)

Procedure section 707 (in effect at the time), which essentially provides that the purchaser at a judicial foreclosure sale is entitled to receive credit for the rents received.

V

Reid asserts there is an ambiguity between the statement of decision and the judgment, in that the judgment provides that Wutzke's trust deed "has priority over the deed of trust of [Reid]," whereas the statement of decision provides "Each of the defendants . . . [are] barred and foreclosed from all rights, claims, interests, or equity of redemption in the property . . . *when time for redemption has elapsed.*" (Italics added.) We perceive no ambiguity. It is clear that based on the emphasized portion of the court's statement of decision that it merely sets forth the time frame during which Reid must exercise its rights as holder of a junior deed of trust, and does not, as Reid suggests, completely "bar and foreclose" those rights.

Reid next claims there is a "Clerical-Type Error" in the judgment which awarded Wutzke $17,490 in attorney fees but failed to list any amount as costs. The statement of decision does indicate Wutzke is entitled to attorney fees in the amount of $17,490 and also specific costs in the amount of $17,490. The duplication of the sum of $17,490 is an obvious clerical error. However, we cannot accept Reid's contention that the award of attorney fees in the amount of $17,490 recited in the judgment was intended to include costs. The determination of costs is made postjudgment following submission of a costs bill. (Code Civ. Proc., §§ 1032, 1033.)

Reid also argues that the court should not have given the award of attorney fees and costs equal priority status with the principal amount of the Wutzke deed of trust. He is wrong. ■ Where, as here, attorney fees are contractually provided for in the trust deed and promissory note, the beneficiary is entitled to recover attorney fees and costs incurred in order to enforce and protect his secured obligation. (Civ. Code, § 1717; *Buck* v. *Barb* (1983) 147 Cal.App.3d 920 [195 Cal.Rptr. 461], mod. 148 Cal.App.3d 1097a; *O'Connor* v. *Richmond Sav. & Loan Assn.* (1968) 262 Cal.App.2d 523 [68 Cal.Rptr. 882], disapproved on other grounds in *Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731 [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39]; see also 1 Miller & Starr, *supra,* § 3.135, pp. 568-569; Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1970) The Obligation, § 4.40, p. 173.)

In this instance Wutzke's action was founded upon her note and deed of trust, which contained a provision for award of attorney fees in the event

action was undertaken to perfect the debt or its security. The trial court award of attorney fees was authorized by law and reasonable in sum.

However, the claim for attorney fees on appeal presents another matter. Defendant (appellant) Reid was not a party to Wutzke's note or deed of trust. In the absence of statutory authority or contractual agreement, attorney fees are not recoverable from an opposing party. (*Canal-Randolph Anaheim, Inc.* v. *Wilkoski* (1978) 78 Cal.App.3d 477, 485 [144 Cal.Rptr. 474]; *Plemon* v. *Nelson* (1983) 148 Cal.App.3d 720 [196 Cal.Rptr. 190].)

The Millers, makers of the promissory note and deed of trust, are not parties to the appeal. There is no mutuality of obligation relative to the contractual provision for award of attorney fees between Reid and Wutzke. In this case, Wutzke's claim for attorney fees on appeal must be denied; however, Wutzke shall recover her costs incurred on appeal.

The judgment is affirmed.

Regan, Acting P. J., and Sparks, J., concurred.

A petition for a rehearing was denied February 16, 1984, and appellant's petition for a hearing by the Supreme Court was denied March 21, 1984.