Filed 10/1/20  Flores v. Mortgage Electronic Registration Systems, Inc. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MANUEL S. FLORES et al.,<br><br>　　　Plaintiffs and Appellants,<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. et al.,<br><br>　　　Defendants and Respondents. | A158044<br><br>(Alameda County<br>Super. Ct. No. RG18909974) |

Plaintiffs Manuel and Jennifer Flores filed an action against defendants Mortgage Electronic Registration Systems, Inc. (MERS) and Deutsche Bank National Trust Company (DBNTC) (defendants) alleging causes of action for wrongful foreclosure, quiet title, and violation of California's Unfair Competition Law.  Defendants moved for judgment on the pleadings on multiple grounds, including that plaintiffs lacked standing to challenge their foreclosure based on an assignment of interest in the deed of trust from MERS to Deutsche Bank and that plaintiffs' claims failed as a matter of law.  The trial court granted the motion without leave to amend.  Plaintiffs appeal.  We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We take the following factual allegations from the complaint.

In August 2006, plaintiffs obtained a loan secured by a deed of trust on certain residential property located in Alameda. The deed of trust identified Countrywide Home Loans, Inc. (Countrywide) as the lender and MERS as the nominal beneficiary.

In September 2006, Countrywide sold the mortgage to Greenwich Capital Financial Products, Inc. (GCFP), sponsor of a mortgage-backed securities transaction that created the Harborview Mortgage Loan Trust 2006-9. Under the trust's pooling and servicing agreement (PSA), only the depositor could transfer the rights and interests in a mortgage note and deed of trust to the trust, and all steps in the transfer had to be supported by effective delivery and acceptance of the endorsed mortgage note and assigned deed of trust. The PSA also required that the transfer of each mortgage loan be made as of the trust's closing date (October 4, 2006) or within 90 days thereafter, in order to maintain the favorable tax status of the trust.

GCFP then sold plaintiffs' mortgage to the depositor, Greenwich Capital Acceptance, Inc. (GCA), and GCA bundled plaintiffs' mortgage with others and sold them to DBNTC, in its capacity as trustee for the Harborview Mortgage Loan Trust 2006-9. Those sales, however, were not properly securitized because they were made without the required assignment of the deed of trust and endorsement of the note in violation of the PSA.

On December 30, 2009, an assignment was recorded, by which MERS attempted to assign the beneficial interest in the deed of trust and the mortgage note to DBNTC. The assignment was allegedly void for several reasons. First, DBNTC never received effective assignment because only the

2

depositor (GCA) could make the final assignment to the trustee of the trust and there were no recorded assignments of plaintiffs' mortgage loan during the securitization process, in violation of the PSA. Second, the assignment was purportedly executed by Tina Sevillano, an employee of ReconTrust falsely holding herself out as an assistant secretary of MERS, but a comparison of her signature on other documents gives rise to a "reasonable inference" that her signature on the assignment was "forged." Third, MERS never held any interest in plaintiffs' mortgage because MERS merely tracked changes in ownership of beneficial rights for loans registered on its system, and thus lacked the ability to assign any beneficial interest in plaintiffs' mortgage loan. Fourth, MERS had already "exited the chain of title" back in September 2006 when Countrywide sold the mortgage loan to GCFP, a non-MERS member.

In May 2016, a substitution of trustee was recorded on behalf of DBNTC, purporting to substitute Barrett Daffin Frappier Treder & Weiss, LLP (Barrett Daffin) as trustee under plaintiffs' deed of trust. Barrett Daffin filed a notice of default and then a notice of trustee's sale. On January 30, 2018, Barrett Daffin conducted a foreclosure sale. The substitution of trustee, notice of default, and foreclosure sale allegedly were void because they flowed from the void assignments discussed above.

In June 2018, plaintiffs filed an action against MERS and DBNTC asserting causes of action for wrongful foreclosure, quiet title, and violation of California's Unfair Competition Law (UCL). (Bus. & Prof. Code, § 17200.) Common to all causes of action is the allegation that Barrett Daffin lacked the authority to initiate foreclosure proceedings because DBNTC never received effective assignment of plaintiffs' deed of trust, and thus DBNTC could not substitute Barrett Daffin as trustee.

Defendants filed a motion for judgment on the pleadings. Defendants concurrently submitted a request for judicial notice of various documents, including the deed of trust, MERS's assignment to DBNTC, DBNTC's substitution of trustee for Barrett Daffin, Barrett Daffin's notices of default and trustee's sale, and the trustee's deed upon sale.

The trial court granted defendants' motion without leave to amend. In analyzing plaintiffs' complaint, the court identified 22 paragraphs challenging the securitization of plaintiffs' loan on the basis of a purportedly flawed assignment. The court found that plaintiffs did not have standing to challenge their foreclosure on this basis. The court also found that plaintiffs did not allege the ability or willingness to tender the outstanding amount due. Finally, the court found that all three of plaintiffs' causes of action were time-barred by the applicable statutes of limitations.

On the request for judicial notice, the trial court explained it was taking judicial notice "only of the filing or recording dates, existence, and legally operative effect of the documents proffered or cited by Defendants, but not the truth of any factual recitations or findings made therein."

Judgment was entered against plaintiffs and in favor of defendants. This appeal followed.

## DISCUSSION

### A. Standard of Review

A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. (Code Civ. Proc., § 438, subd. (c)(3)(B)(ii).) Such a motion is equivalent to a demurrer and is governed by the same de novo standard of review. (*Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 672.) All properly pleaded, material facts are deemed true, but not contentions,

4

deductions, or conclusions of fact or law. (*Ibid.*) Courts may consider judicially noticeable matters in the motion as well. (*Ibid.*; *People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.)

A judgment on the pleadings should not be granted without leave to amend if there is a reasonable possibility that the defect can be cured by amendment. (*Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113, 118.) Plaintiffs bear the burden of proof on this point. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## B. Wrongful Foreclosure

To state a claim for wrongful foreclosure, plaintiffs must allege that the defendant caused an illegal, fraudulent, or willfully oppressive sale of the property; plaintiffs suffered prejudice or harm; and plaintiffs tendered, or were excused from tendering, the amount of the secured indebtedness. (*Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 408–409.) "[M]ere technical violations of the foreclosure process will not give rise to a tort claim; the foreclosure must have been entirely unauthorized on the facts of the case." (*Id.* at p. 409.)

Here, plaintiffs assert that DBNTC had no authority to direct Barrett Daffin to conduct a foreclosure sale because the assignment from MERS to DBNTC recorded on December 30, 2009 was void. Plaintiffs allege the assignment was void for four reasons: (1) the assignment was not effective based on violations of the PSA during the securitization process; (2) the assignment was signed in the name of a non-MERS employee with a forged signature; (3) MERS never held any interest in plaintiffs' mortgage and therefore lacked the ability to assign any beneficial interest in the loan; and (4) MERS could not make the assignment in December 30, 2009 because it

5

had already exited the chain of title in September 2006 when Countrywide sold the mortgage loan to GCFP. We address each theory in turn.

### 1. *Alleged Violations of the PSA*

The trial court identified 22 paragraphs of plaintiffs' complaint that challenged the securitization of plaintiffs' loan on the basis of a purportedly flawed assignment from MERS to DBNTC, including allegations that "DBNTC never received effective assignment of the loan during the securitization process due to the failure of the participants in the securitization to follow the chain of title protocol mandated by the governing trust documents." The trial court then determined plaintiffs had no standing to bring a wrongful foreclosure claim on this basis.

Plaintiffs contend the trial court committed by reversible error by relying on judicially noticed facts instead of accepting their "well-pled" allegations, including one specifically alleging that plaintiffs "do not attack the securitization process in this lawsuit." We disagree. As indicated, the court expressly based its ruling on 22 paragraphs of the complaint. Moreover, plaintiffs' conclusory allegation that they are not attacking the securitization process need not be accepted by the trial court, or by us. (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 759.)

We now turn to the merits of the trial court's ruling. "Standing is a threshold issue necessary to maintain a cause of action, and the burden to allege and establish standing lies with the plaintiff." (*Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 809 (*Mendoza*).) Plaintiffs argue that their allegations are sufficient to confer standing under *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919 (*Yvanova*).

In *Yvanova*, the California Supreme Court held that a borrower has standing to challenge an assignment of the deed of trust when the

6

allegations, if true, would render the assignment "void, and not merely voidable at the behest of the parties to the assignment[.]" (*Yvanova*, *supra*, 62 Cal.4th at p. 923.) That is, if there is an assignment that is necessary to the authority of an entity to foreclose, but that assignment is "absolutely void, meaning of no legal force or effect whatsoever," then the foreclosing entity would have acted without legal authority and the foreclosure would be wrongful. (*Id.* at p. 935.) In that circumstance, borrowers have standing because they are asserting their own interest in ensuring their properties are foreclosed upon only by those with legal authority to order a foreclosure sale. (*Id.* at p. 937.) On the other hand, "[w]hen an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so." (*Id.* at p. 936.) Thus, borrowers do not have standing to challenge a voidable assignment because they would be asserting an interest belonging solely to the parties to the assignment, not their own interest. (*Ibid.*) Accordingly, the question of whether plaintiffs have standing on this theory depends on whether the alleged violations of the PSA, if true, would render the assignment from MERS to DBNTC void, or merely voidable.

Several California courts have already answered this question. In *Mendoza*, the plaintiff borrower claimed the assignment of a deed of trust by JPMorgan Chase Bank to Chase Home Finance LLC was void because during the securitization process, plaintiff's note and deed of trust were not properly transferred into trusts before their applicable closing dates in violation of the trusts' pooling and servicing agreements. (*Mendoza*, *supra*, 6 Cal.App.5th at p. 808.) The appellate court looked to California, New York, and federal court decisions for guidance on the matter (*id.* at p. 811) and found they adhered to

7

the principle that "a borrower does not have standing to challenge an assignment that allegedly breaches a term or terms of a PSA because the beneficiaries, not the borrower, have the right to ratify the trustee's unauthorized acts." (*Id.* at pp. 812-813.) As the case law recognized, to hold otherwise would allow a stranger to the PSA and associated trust (i.e., the borrower) to interfere with that right. (*Ibid.*) *Mendoza* followed this "mountain of authority" in upholding the trial court's ruling that the plaintiff lacked standing to challenge the assignment. (*Id.* at pp. 816, 820.)

The decision in *Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23 (*Kalnoki*) is also on point here. In *Kalnoki*, the plaintiff borrowers claimed the assignment of their deed of trust from Wells Fargo to U.S. Bank, as trustee for the Bear Stearns securitized trust, was void because the assignment violated the trust's pooling and servicing agreement. (*Id.* at p. 31.) After determining that "any alleged irregularities in the securitization process are merely voidable at the securitized trust beneficiary's behest," *Kalnoki* determined the plaintiffs lacked standing to challenge the assignment on such grounds because they "are not beneficiaries of the Bear Stearns securitized trust." (*Id.* at p. 43; see *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515 ["As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, Jenkins lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions"].)

As described above, plaintiffs' complaint specifically alleges the assignment from MERS to DBNTC was not effective "due to the failure of the participants in the securitization to follow the chain of title protocol mandated by the governing trust documents." Contrary to plaintiffs'

contentions otherwise, these and the other allegations regarding violations of the PSA constitute a challenge to the securitization process. Since plaintiffs are not beneficiaries of the Harborview Mortgage Loan Trust 2006-9, they are not parties to the PSA who can enforce its terms. Accordingly, plaintiffs lack standing to challenge the assignment from MERS to DBNTC on the basis of the alleged PSA violations.

### 2. *Signature on Assignment*

Plaintiffs also allege the assignment from MERS to DBNTC was void because it was purportedly executed by Tina Sevillano, an employee of ReconTrust who falsely held herself out as an assistant secretary of MERS. Moreover, plaintiffs allege that a comparison of Sevillano's signature on other documents gives rise to a "reasonable inference" that her signature on the assignment was "forged." We are not persuaded.

Relying on *Wutzke v. Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, 43, plaintiffs contend they have standing to maintain this theory because "a forged document is *void ab initio*[.]" We do not find *Wutzke* on point, as that case involved a purchaser of property who falsified a deed of reconveyance. (*Id.* at p. 43.)

Instead, we again find *Kalnoki* instructive. In that case, the plaintiffs claimed the notice of default and attached declaration were void because they were either robo-signed by an employee of Wells Fargo or fraudulently signed by someone claiming to be that employee. (*Kalnoki*, *supra*, 8 Cal.App.5th at p. 46.) *Kalnoki* explained that, even if true, factual allegations such as those were insufficient to set aside a foreclosure where, as there, the plaintiffs "do not dispute the accuracy of any of the salient facts, such as the amount owed or that their loan was in default." (*Ibid.*) Moreover, to the extent the default declaration was in fact robo-signed, *Kalnoki* concluded " 'it would be voidable,

9

not void, at the injured party's option.' " (*Ibid.*)  There, the injured party would have been Wells Fargo, not the plaintiff borrowers.  (*Ibid.*)

As in *Kalnoki*, plaintiffs' allegations are not sufficient to set aside their foreclosure, and plaintiffs concede the fact that they were behind in their mortgage payments.  Moreover, even accepting those allegations as true, the assignment would not be void, but merely voidable by DBNTC as the injured party.  In sum, plaintiffs lack standing to challenge the assignment on the basis of Sevillano's signature.

### 3.  *MERS's Authority to Assign the Deed of Trust*

Plaintiffs additionally allege the assignment from MERS to DBNTC was void because MERS merely tracks changes in ownership of beneficial rights registered on its system, and thus had no authority to transfer any interest because it was not the owner or holder of the underlying note.  To support their argument, plaintiffs rely on out-of-state cases holding that a plaintiff in a foreclosure action must show it is the holder of the note and the mortgage at the time the complaint was filed. (E.g., *In re Foreclosure Cases* (S.D. Oh. 2007) 521 F. Supp. 2d 650, 653.)  Those cases are neither on point nor binding on this court.  (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 905.)

California courts have already rejected the argument that MERS's lack of a possessory interest in the note deprives it of authority to make a valid assignment.  In *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, for example, the plaintiff borrowers filed a complaint against MERS, Quality Loan Services Company, and Deutsche Bank, claiming that MERS as nominee for the lender had no authority to assign the deed of trust and the note to Deutsche Bank.  (*Id*. at p. 79.)  *Siliga* determined that the plaintiffs' deed of trust, attached to their complaint,

10

"establishes as a factual matter that MERS has the authority to exercise all of the rights and interests of the lender." (*Id.* at p. 83.) The deed of trust identified MERS as the "beneficiary" of the security instrument, " 'solely as nominee for Lender and Lender's successors and assigns[.]' " (*Id.* at p. 78.) It also provided: " 'Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.' " (*Id.* at pp. 78–79.) Upon determining that the above-described authority of MERS to exercise all of the rights and interests of the lender "necessarily includes the authority to assign the deed of trust" (*id.* at p. 84), *Siliga* concluded that the plaintiffs, who had agreed to MERS's authority under the terms of the deed of trust, were precluded from maintaining a cause of action based on the theory that MERS has no authority to exercise those rights. (*Id.* at p. 83.)

Here, plaintiffs' deed of trust contains the same language, i.e., "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." Plaintiffs, moreover, agreed that "MERS (as nominee for Lender and Lendor's successors and assigns) has the right: to exercise any or all of those interests . . . and to take any action required of Lender[.]" We see no basis for distinguishing the instant case from *Siliga*, and conclude plaintiffs are precluded from maintaining their claims based on the theory that MERS had no authority to make the assignment to DBNTC.

11

### 4. MERS's Authority After Countrywide Sale

Plaintiffs' final theory that the assignment from MERS to DBNTC was void stems from the allegation that MERS had already exited the chain of title back in September 2006 when Countrywide sold the mortgage loan to GCFP, an entity that is not a member of the MERS registry system. Plaintiffs contend this sale to a non-MERS member stripped MERS of its authority to make the assignment to DBNTC because MERS lacked an agency relationship with GCFP, and thus lacked an agency relationship with subsequent purchaser DBNTC.

In *Herrera v. Federal National Mortgage Association* (2012) 205 Cal.App.4th 1495, 1502, plaintiff borrowers attacked MERS's ability to assign the deed of trust and note because there was no agency agreement between MERS and the successor lenders and assigns, FDIC and IndyMac Federal. *Herrera* rejected the argument, explaining the plaintiffs had agreed in their deed of trust that MERS held the right to exercise all interests and rights held by the original lender, as well as its successors and assigns. (*Id.* at p. 1504.) Given this language in the deed of trust, the allegation that MERS did not have an agency agreement with FDIC or IndyMac Federal was insufficient to support a claim for wrongful foreclosure. (*Id.* at p. 1505.)

Here, again, plaintiffs' deed of trust contains the same language above and thus warrants the same result. That is, the deed of trust identifies MERS as a "nominee for Lender and Lender's successors and assigns." Because GCFP and DBNTC were "successors and assigns" of the original lender Countrywide, MERS was authorized as their nominee to exercise the lender's powers under the terms of plaintiffs' deed of trust. Accordingly, plaintiffs cannot maintain their claims based on the theory that

12

Countrywide's sale stripped MERS of the authority to make an assignment to DBNTC.

## C. Remaining Causes of Action and Leave to Amend

Plaintiffs' remaining causes of action for quiet title and violation of the UCL are based on the same allegations of wrongdoing as the wrongful foreclosure claim, i.e., that Deutsche Bank had no interest in the deed of trust because the assignment from MERS was void, and that the trustee's deed upon sale was fraudulent. Accordingly, these causes of action fail for the same reasons described above.[1]

Finally, we turn to the question of whether the trial court abused its discretion when it granted the motion for judgment on the pleadings without leave to amend. To make that determination, we consider whether on the pleaded and noticeable facts there is a reasonable possibility of an amendment that would cure the complaint's legal defect or defects. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

On appeal, plaintiffs argue they can amend their complaint to provide "additional support" for the theory that neither DBNTC nor its agents have ever held any legitimate interest in plaintiffs' loan, in order to "further explain" why the assignment from MERS to DBNTC "is not dependent on a defective assignment made during the securitization process." Plaintiffs, however, offer no new factual allegations to merit an opportunity to amend their complaint, but instead suggest they seek to further develop theories that we have determined are insufficient to maintain their claims. Thus, we

---

[1]     In light of this conclusion, we need not address defendants' arguments that the judgment should be affirmed on the alternative grounds that (1) plaintiffs' claims are time-barred; (2) plaintiffs failed to allege willingness or ability to tender the outstanding amount of their debt; and (3) plaintiffs failed to allege an injury caused by defendants' purported UCL violations.

13

conclude that the trial court did not abuse its discretion in denying leave to amend.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____

FUJISAKI, J.

We concur.

_____

SIGGINS, P.J.

_____

JACKSON, J.

(A158044)

15